[Filed March 4, 1892.]

## M. H. MURPHY *v.* CITY OF ALBINA.

Municipal Corporations—Officers and Agents—Excess of Authority—Ratification.— A municipal corporation, like a private person, is liable for services performed for it under direction of its officers or agents, but in excess of their authority, provided it ratifies and accepts the same after they are brought to its official knowledge through proper channels; but mere silence or acquiescence will not amount to ratification; there must be some affirmative action in that respect, or action from which ratification would be necessarily inferred.

Idem—Common Council—Official Meetings.— Where the liability of a municipal corporation depends on the action of its common council, such action, to be binding, must be had by ordinance, resolution, or other equivalent proceeding at a meeting of such body regularly convened, and cannot be based on acts of individual members of the council not at an official meeting.

Multnomah county: E. D. Shattuck, Judge.

Plaintiff appeals. Affirmed.

*George A. Brodie,* for Appellant.

*W. T. Muir,* city attorney, for Respondent.

Bean, J.—This is an action to recover on a *quantum meruit* for work and labor alleged to have been performed by plaintiff, in grading, cutting, and filling one of defendant's streets, known as Margaretta avenue. This is the second appeal in this case. For the purposes of this appeal, the facts sufficiently appear in the case as reported (20 Or. 379), except from this record it appears that plaintiff by his written contract was to grade Margaretta avenue, a public street of the defendant, to the grade established by the city, as surveyed and established by Hulbert & McQuinn, and according to a profile made by them and made a part of the contract. the work to be done under the supervision of the committee on streets and public property, who should furnish the contractor with all necessary heights and distances, for which work he was to receive, on the approval in writing of the committee on streets and public property and engineer in charge, a certain rate per cubic yard for

all necessary excavations and fills made by him, reference being made to a tracing made by the engineer in charge as to the number of yards of excavation or fill required.

The evidence tended to show that plaintiff proceeded to perform his contract, the engineer in charge setting stakes along the line of the work, giving the height as established by the defendant and provided in the contract. After he had finished grading according to the stakes set by the engineer, and was ready for laying sidewalk and planking, the engineer made a change in the grade stakes of from three to ten inches of a rise in the grade, the entire length of the street, and directed plaintiff to bring the surface of the street up to this line. Plaintiff complained to the mayor and two members of the council of the action of the engineer in changing the grade, and was by the mayor told "to go ahead and finish his work according to the engineer's instructions, and quit his complaining or he would not get paid for his work, or something to that effect"; that he did finish the work according to the instructions of the engineer, and was compelled to do four hundred and sixty-six dollars and twenty cents worth of work more than called for in his contract and the estimates accompanying the same; that he told one member of the council and the mayor that if they did not rectify the mistake there would be damages claimed, and on the day the street committee was examining the work after its completion he told them he should sue defendant for damages; that after the work was completed, the defendant accepted and paid for all the work provided in the contract, but refused to pay for any extra work as ordered by the engineer. It does not appear that the council as an official body authorized or assented to the change in the contract or street grade by the engineer, or directly ratified the same; nor does it appear that the common council directed or had knowledge that the plaintiff was doing the extra work, or knew that it had been done at the time the

work under the contract was accepted, unless it might be inferred from the fact that the mayor and two members of the council knew of the change in the grade, and the mayor directed the work, and a majority of the individual members of the council knew that plaintiff threatened to make some claim for compensation for the extra work ordered by the engineer.

The errors complained of are in the giving and refusal of certain instructions by the trial court. The instruction requested by plaintiff and refused by the court, the refusal of which we held to be an error on the former appeal, to the effect that if the extra work was ordered by the engineer and performed by plaintiff under the direction of the mayor and two members of the council, and the city, acting through its proper officers, accepted the same, the defendant is liable, was in substance given in the general charge, the court adding an explanation in the opinion proper and necessary to a clear understanding by the jury, as to who are the proper officers and how they must act in order to bind the city, and therefore requires no further consideration here. On this point the former decision was, that if the work was performed in improving the streets of defendant without regular authority, by direction of some person assuming to act for it, and was afterwards accepted by defendant, this would be a ratification and equivalent to an original authority. But as to what would constitute an acceptance of the work, was not in the case, nor considered or decided by the court. The record then before us showed "that when said work (extra work) was completed, as ordered by the city surveyor, the same was accepted by the city of Albina," so that the only question was, whether under such a state of facts the city was liable for the reasonable value of the work.

But on the second trial the question of acceptance was the vital point in the case, and it was therefore proper and necessary for the court to instruct the jury fully upon this

question, and the instruction as requested by plaintiff furnished no guide for the jury as to who are the proper officers of the city, and as to what would amount to an acceptance of the work. It follows therefore that this case must depend upon the correctness of the instructions as given by the court. The jury was instructed in effect, that in order for plaintiff to recover, it must appear that there was work done by plaintiff outside of his contract, at the request and with the knowledge of a majority of the members of the council, and that plaintiff made claim for the extra work, and the council, as an official body, recognized the claim and accepted the work, and that conversations with individual members of the council on the street would not amount to a contract or acceptance of the work, but in order to bind the city the council must have been together, acting as a body; and that if plaintiff did perform work outside of his contract, and the council simply undertook to accept the completion of the contract and pay what was earned under it, the city would not be liable for any extra work, although the members of the council may have been informed on the street as individuals that plaintiff claimed something for extra work. Certainly the defendant is not liable if it did not as a municipal corporation contract with or in any way authorize the plaintiff to do the extra work necessary to bring the street up to the grade established by its engineer, or by some corporate act ratify the contract or accept the work. Though it may be charged with the duty of regulating and repairing the streets, undoubtedly no action will lie against it for work or labor put upon them without its assent or authority. There is no room here for the contention that the defendant in any way contracted with or authorized plaintiff to perform this extra work. The only contract it made with him was the written one which provided expressly that the work should be done according to the grade as established by Hulbert & McQuinn. The provision in the contract, that the work

should be done under the supervision of the committee on streets and the engineer in charge, conferred no authority upon either of them to change or modify in any essential particular the provisions of the contract. (*Bonesteel* v. *New York*, 22 N. Y. 162; *Rens* v. *Grand Rapids*, 73 Mich. 237; *Dillon* v. *Syracuse*, 9 N. Y. Supp. 98; *Genovese* v. *Mayor*, 55 N. Y. Superior, 397.)

When this contract was signed and executed, no officer of defendant had any authority to change its provisions unless expressly authorized by the common council. That body alone, or some one duly authorized by it, was competent to change the terms of the contract or the grade of the street. The duty of the engineer was to see that the terms of the contract were complied with and the street brought to the grade as provided therein, and for that purpose and that alone he was the agent of the city. But when he assumed to change the grade as established by the city he was doing an unauthorized act, and one in no way binding upon the defendant. The change made by him was a material one, raising the surface of the street from three to ten inches above that established by the city, and if valid, imposed upon the defendant a liability for four hundred and sixty-six dollar's worth of work in excess of its contract, and that without its assent. If such an act be valid and binding on the defendant, there is but little protection for municipal corporations against the unauthorized acts of subordinate agents.

It was argued that the act of the individual members of the council in assenting to the change of the grade and directing the plaintiff to complete the work according to the instructions of the surveyor is binding upon the defendant, and the opinion upon the former appeal is relied on as the law of this case. As to every point presented and decided by this court in the former case, the decision becomes the law of the case, binding upon both the parties and this court so far as the same state of facts

is substantially presented, but no further. As we have already said, the only question presented or decided on the former appeal was, whether the defendant was liable upon an implied contract for work performed on its streets under the direction of some unauthorized person after it had accepted the work. As to whether the individual members of the council could bind the defendant by contracts or agreements made not as an official body, or what acts would constitute an acceptance of the work, were not presented, considered or decided.

The opinion of the chief justice must be read with reference to the question actually before the court, and the admissions and statements in the record, and when so read the doctrine contended for by plaintiff finds no support therein. It is an elementary principle that the affairs of a corporate body, private or municipal, can be transacted only at a corporate meeting, regularly convened, and that the acts of the individual members in no way bind the corporation. The only existence of the common council of a municipal corporation is as a board, "and they can do no valid act except as a board, and such act must be by ordinance or resolution, or something equivalent thereto." (1 Dil. Mun. Corp. 455; 15 Am. & Eng. Enc. Law, 1028; *Dey* v. *Jersey City*, 4 C. E. Green, 412; *Butler* v. *Charlstown*, 7 Gray, 12; *Stoystown etc. Road Co.* v. *Craver*, 45 Pa. St. 386; *In re St. Helens Mill Co.* 3 Saw. 88; *Zottman* v. *San Francisco*, 20 Cal. 96; 81 Am. Dec. 96; *Gaswiler* v. *Willis*, 23 Cal. 11; 91 Am. Dec. 607.)

The contract with plaintiff was formally entered into by the authority of the common council of defendant, and if a change were desired, it could only be made by the same parties that made the contract,—the common council or its authorized agent on one side and plaintiff on the other. Declarations or agreements of one or more, or even all of the councilmen, not at an official meeting, that they would be willing to consent to a change in the grade and allow plaintiff extra pay for the increased work, do not

bind the defendant. The defendant could consent to a change in the contract only by its council acting as a body or through some authorized agent, and not by the several members of the council acting as individuals. (*Stoystown etc. Road Co.* v. *Craver,* 45 Pa. St. 386; *Schumm* v. *Seymore,* 24 N. J. Eq. 143.) The work, then, having been performed by plaintiff without any contract with or authorization by the defendant, it follows that it is not liable unless it has by some corporate act ratified or assented to the same. The only body competent to accept the work or ratify the contract is the common council of the defendant, and it can only act when duly convened in some manner provided by law. Corporations may be and often are bound by implied contracts within the scope of their powers, to be deduced by inference from authorized corporate acts without either a vote or resolution of their governing bodies. (1 Dil. Mun. Corp. § 459.) And where a contract has been entered into in good faith, and the city has received the benefit of the performance, a ratification of the unauthorized contract may under some circumstances be inferred without any formal action of the corporate authorities; but when the work is performed upon a public street of a municipality without its assent, no implied contract can be inferred from the fact that the street is subsequently used by the public. (*Taft* v. *Montague,* 14 Mass. 281; 7 Am. Dec. 215; *McDonald* v. *Mayor,* 68 N. Y. 23; 23 Am. Rep. 144; *Davis* v. *School Dist.* 24 Me. 349; *Pratt* v. *Swanton,* 15 Vt. *147; *Wilson* v. *School Dist.* 32 N. H. 118; 1 Dil. Mun. Corp. § 464.) In such case, to render the municipal corporation liable, the contract must be ratified or the work accepted by some express act of the council. Any other doctrine fails to extend to municipal corporations the privileges and immunities that are accorded by law to other contracting parties, public or private.

Nor can any inference of acceptance or ratification be deduced from the acts of the council in accepting or paying for the work performed under the written contract. This

it not only had a right but by its contract was bound to do.. And because it complied with the terms of its contract, no inference can be drawn that it intended to accept any work performed without its authority or assent. (*Durango* v. *Pennington*, 8 Col. 257.) Before it can be held to have accepted the work performed by plaintiff by the direction of the engineer and individual members of the council, it must appear by some affirmative act that it accepted the work, or from which such acceptance can be inferred. Mere silence is not sufficient; for if so it would require a meeting of the council and an express dissent every time an officer undertakes to impose an unauthorized liability upon the city, to enable the corporation to prevent ratification. (*Otis* v. *Stockton*, 76 Me. 506.) Of course, there may be times when a corporation as well as an individual should act or speak, or when it does speak by the force of circumstances; but such is not this case.

It is urged that the court erred in holding that the knowledge that plaintiff made some claim for extra work, obtained by individual members of the council, on the street, would not bind them when they came to vote upon the resolution offered, to accept the work performed under the contract with plaintiff, unless the plaintiff made such claim at the time the resolution was under consideration. In support of this contention, reliance is had upon the language of the court in the former opinion, that "two of the members of the council and the mayor who authorized the work, had knowledge of their own acts in directing the work to be done, and when they met and accepted it, it is difficult to see why the city was not thereby rendered liable." It will be observed that this statement is also based upon the fact that the work was accepted by the council at an official meeting; and it was held that having so accepted the extra work, the defendant was liable without any formal resolution authorizing or ratifying the act

XXII OR.—8.

of the engineer and individual members of the council in directing it to be done, and that the ratification would be implied from the act of accepting the work with knowledge that plaintiff claimed pay therefor. But it is not perceived how knowledge that plaintiff claimed pay for work performed under an unauthorized contract can render the defendant liable until it has done some act amounting to an acceptance of the work or ratification of the contract. Even had the individual members of the council, who had knowledge of and directed this work, agreed with plaintiff to ratify the contract at a subsequent meeting of the council, such arrangements would have been contrary to public policy, and not binding upon them, when they came to act officially upon the question. (*McCortle* v. *Bates*, 29 Ohio St. 419; 23 Am. Rep. 758.) A sufficient answer to the suggestion that the conclusion we have reached works a hardship upon plaintiff, who in good faith performed the extra work, supposing that the persons who directed it to be done were authorized to do so, is, that every person dealing with the agents of a municipal corporation must at his peril see that such agents are acting within the scope of their authority and line of their duty, and if he make an unauthorized contract he does so at his own risk. The courts cannot disregard the well settled rules of law in order to avoid an apparent injustice in a particular case.

The judgment of the court below is therefore affirmed.