FRANK THOMPSON ET AL., APPELLANTS, V. GEORGE W. WEST ET AL., APPELLEES.

FILED MARCH 7, 1900. No. 9,136.

1. Repeal of Statute: ABSENCE OF SAVING CLAUSE. In the absence of a general saving clause, the repeal of a statute will not affect a suit previously brought to enforce a right founded thereon or accrued thereunder.

2. ———: DEFICIENCY JUDGMENT. The repeal of the statute permittting the recovery of deficiency judgments did not affect actions then pending.

3. Incorporated Religious Society: POWER TO ACQUIRE REAL ESTATE. An incorporated religious society has no power to acquire or hold real estate for any purpose other than that of promoting the object of its creation.

4. Contract: ULTRA VIRES. A contract entered into by such a corporation for the purchase of real estate as a matter of speculation merely is *ultra vires* and void.

5. Indorsee: ILLEGAL NOTE: INNOCENT HOLDER: BURDEN OF PROOF. Where, in an action by an indorsee of a promissory note, it is established that the instrument was illegal in its inception, the burden is cast upon the plaintiff to show that he is an innocent holder for value and before due.

6. Board of Trustees: NOTICE: PARTICIPATION. The action of the majority of a board of trustees of a religious society will not bind the latter without notice to or participation therein by the other members of the board.

7. Corporation: CONTRACT: RATIFICATION. A corporation can not ratify a contract which it had not the power to make.

APPEAL from the district court of Lancaster county. Tried below before HOLMES, J. *Affirmed.*

*Morning & Berge,* for appellants, cited Compiled Statutes of Nebraska, 1897, sec. 1717, and argued that this provision of the statute expressly gave the church

authority to acquire, hold, enjoy and dispose of all property, real and personal, which the defendant church may acquire by purchase, donation or otherwise, for the purpose of carrying out the intention of such church corporation. It was not contended by the defendant church that the money it received from the plaintiffs was used for any other purpose than to carry on the work of the church. It did not contend that it did not have legal capacity to borrow money. It did allege, however, in its answer, that it purchased from Ward S. Mills a certain tract of land for the sole and only purpose of speculation, and that such speculation was in nowise necessary for the purpose of carrying out its intention as a corporation. While it made this allegation in its answer, yet it expressly admitted that the money it received from plaintiffs was used by said trustees for the payment of debts of said church, and in the construction of its church building. Defendant church might now call it what it would, it did admit that whatever it did in connection with this matter was done by its trustees to further the interests of the church. If, in the case at bar, the church did go into a real estate speculation, and if that speculation had to do with the issues in this case, yet there was not a word of evidence that it was not all done to carry on the work of the church more successfully. The board of trustees was charged with the responsibility of managing the financial affairs of the church, and the board purchased said real estate for no other purpose but to build up and strengthen the financial interests of the church, which we contend it had a right to do. Counsel cited *Wright v. Hughes*, 12 Am. St. Rep. [Ind.], 416; *Spear v. Crawford*, 28 Am. Dec., 515, 14 Wend. [N. Y.], 20; *Rivanna Navigation Co. v. Dawsons*, 46 Am. Dec., 183, 3 Gratt. [Va.], 19; *Bissell v. Railroad Cos.*, 22 N. Y., 271.

The defense of *ultra vires* can not be urged by a corporation to the injury of an innocent third party. See *Bank of Genesee v. Patchin Bank*, 13 N. Y., 313; *Gansevoort*

*v. Williams*, 14 Wend. [N. Y.], 133; *Catskill Bank v. Stall*, 15 Wend. [N. Y.], 364; *Evans v. Wells*, 22 Wend. [N. Y.], 324; *Bank of Genesee v. Patchin Bank*, 19 N. Y., 312; *Mechanics' Banking Ass'n v. N. Y. Saugerties White Lead Co.*, 35 N. Y., 505; *Olcott v. Tioga R. Co.*, 84 Am. Dec., 298, 27 N. Y., 596.

Powers granted to a corporation may always be used by it subject only to express limitations imposed by its charter. See *Wright v. Hughes, supra; New England Ins. Co. v. Robinson*, 25 Ind., 536; *Booth v. Robinson*, 55 Md., 419; Green's Brice's Ultra Vires, p. 223.

Whatever irregularities there may have been in the proceedings of the board, when this money was borrowed by the defendant church from plaintiffs the trustees and the entire church had ratified said acts; and the defendant church is now estopped from pleading these irregularities. See *Scott v. Middleton*, 86 N. Y., 200; *Scott v. Trustees First M. E. Church of Jackson*, 15 N. W. Rep., 892, 50 Mich., 528.

Case was argued orally for appellants by *George W. Berge*.

*T. F. A. Williams*, for the First Christian Church of Lincoln, Nebraska, argued that the transaction upon which appellants based their claim to a deficiency judgment against the church was beyond the powers of the church corporation, citing Compiled Statutes, 1899, ch. 16, secs. 42 and 55; Taylor, Private Corporations, [3d ed.], sec. 297.

On the question of ratification and estoppel, counsel argued that the thing done by the trustees of the church was not *ultra vires* simply on account of a defect of power, nor was it a case of the irregular exercise thereof. What they did was absolutely prohibited by that section of the statute granting them whatever authority they possessed, as well as by the general statutory provision. Counsel cited 7 Thompson, Corporations, sec. 8320.

The district court had no jurisdiction to enter deficiency judgment in this action. In the absence of statute, at common law, the mortgagee, after default, could maintain ejectment to recover possession or sue on the note or foreclose the mortgage. All of these remedies he could pursue concurrently. See *Dimick v. Grand Island Banking Co.*, 37 Nebr., 399; *Bing v. Morse*, 51 Nebr., 842; 1 Beach, Modern Equity Jurisprudence [ed. 1892], sec. 499. A court of chancery could enter a deficiency judgment in the foreclosure action, if at all, only where the debt, without the mortgage, was such that a court of chancery would have jurisdiction of it and could enforce it. See Jones, Mortgages [3d ed.], sec. 1711; *Morgan v. Wilkins*, 6 J. J. Marsh. [Ky.], 28. In the case at bar there were no equitable elements, aside from the mortgage, on which to base a jurisdiction of the court to render a deficiency judgment herein. It is not a case of loss of securities or of mistake or of fraud, and the mortgagor never sold the property to anybody.

*C. S. Rainbolt* also appeared for appellees.

*Morning & Berge*, in reply, cited: *Barnitz v. Beverly*, 163 U. S., 118; *State v. City of Kearney*, 49 Nebr., 325; Bishop, Contracts, sec. 565; *Jackson v. Creighton*, 29 Nebr., 310; *White v. Rourke*, 11 Nebr., 519; *State v. Clarke*, 25 Nebr., 250; *State v. McPeak*, 31 Nebr., 139.

Counsel argued that the decisions of this court were numerous in which it had been held that the laws which prescribed the mode of enforcing a contract, and which were in existence when such contract was made, were so far a part of the contract that no change in these laws which seriously interfered with that enforcement was valid, because they impaired its obligation within the meaning of the constitution of the United States. Federal decisions are to the same effect.

NORVAL, C. J.

This was a suit to foreclose a real estate mortgage executed and delivered by one George W. West to Ward S. Mills to secure the payment of one principal note and coupon notes thereto attached. The principal note was transferred by the payee, Mills, to the First Christian Church of Lincoln, and by two of its trustees sold and in-dorsed to James Thompson, now deceased. A decree of foreclosure was entered, the mortgaged premises were sold and the sale confirmed, and a deficiency existing after the proceeds of sale were applied on the debt, a judg-ment therefor was asked against said church as an in-dorser of the paper, which request was denied. Plain-tiffs appeal.

The only question raised is whether the court below erred in refusing to render a deficiency judgment against the church. It is disclosed by the record that certain of the trustees of the First Christian Church of Lincoln, and who assumed to act for it, purchased of Mills a number of vacant and unimproved lots situate in Mills' Second Addition to University Place. The lots were pur-chased for the purpose of speculation, or with the view of being resold at an advance over the cost price, but the title to the property was permitted to remain in the name of Mills, who, on the trustees making the sale of a lot, at their request executed a deed to the purchaser and the latter gave to Mills a note, secured by a mort-gage on the property, for the unpaid purchase money. Mills thereupon indorsed and transferred the note and mortgage to the First Christian Church of Lincoln. One of these lots was sold to West, who executed the note and mortgage in suit to Mills for the amount of the purchase price remaining unpaid, and this note was indorsed without recourse by the payee and delivered to said church. Subsequently, the note and mortgage were transferred by certain of the trustees, in the name of the church, to James Thompson, plaintiffs' decedent.

The governing board of the trustees of the church corporation never held any meeting for the purpose of taking any action relative to, nor did such board, as a body, authorize, the purchase and sale of the lots, or the transfer of the note and mortgage in question.

The defendant church contends that no deficiency judgment could properly be rendered against it for the following reasons:

1. No judgment for a deficiency can be lawfully rendered in this state in a suit to foreclose a mortgage.

2. The contract relative to the purchase of the lots of Mills for the purpose of speculation was without the power of the First Christian Church of Lincoln, and therefore *ultra vires* and void.

3. The indorsement of the note and the sale thereof to plaintiffs' decedent was never authorized or sanctioned by the board of trustees of said church.

These propositions will receive consideration in the order stated. Prior to 1897 the following sections were parts of the Code of Civil Procedure of this state:

"Sec. 847. When a petition shall be filed for the satisfaction of a mortgage, the court shall not only have the power to decree and compel the delivery of the possession of the premises to the purchaser thereof, but on the coming in of the report of the sale, the court shall have the power to decree and direct the payment by the mortgagor of any balance of the mortgage debt that may remain unsatisfied after a sale of the mortgaged premises, in the cases in which such balance is recoverable at law; and for that purpose may issue the necessary execution, as in other cases, against other property of the mortgagor.

"Sec. 849. If the mortgage debt be secured by the obligation or other evidence of debt of any other person besides the mortgagor, the complainant may make such person a party to the petition, and the court may decree payment of the balance of such debt remaining unsatisfied after a sale of the mortgaged premises, as well

against such other person as the mortgagor, and may enforce such decree as in other cases."

It is plain enough that under the quoted sections, and prior to their repeal, it was proper in a foreclosure case, on the coming in of the report of sale, to enter a decree or judgment against the mortgagor and other persons liable for the payment of the mortgage debt. See *Davenport Plow Co. v. Mewis*, 10 Nebr., 317; *Clapp v. Maxwell*, 13 Nebr., 542; *Cooper v. Foss*, 15 Nebr., 515; *Grand Island Savings & Loan Ass'n v. Moore*, 40 Nebr., 686; *Hare v. Murphy*, 45 Nebr., 809; *Flentham v. Steward*, 45 Nebr., 640. But these sections of said Code were repealed by the legislature of 1897 (Laws, 1897, ch. 95), and by reason thereof it is strenuously argued by counsel for the church that the power to enter deficiency judgments is abrogated in all cases without regard to the date the debt was contracted, or whether proceedings may have been taken to enforce the same at the time the repealing statute was adopted. On the other hand, it is argued by counsel for plaintiffs that the repealing act of 1897 had no application to suits then pending, nor to causes of action then accrued, nor decrees already entered.

Whether or not a statute which denies the right to a deficiency judgment as to existing debts is unconstitutional as impairing the obligations of contracts, the court is not at this time called upon to decide, and we refrain from now entering upon a discussion of the question. Section 2, chapter 88, Compiled Statutes, declares that "whenever a statute shall be repealed, such repeal shall in no manner affect pending actions founded thereon, nor causes of actions not in suit." If the jurisdiction of the district court to enter deficiency judgments exists independent of statute, as has been argued, it is too plain to require elaboration that it was not taken away by the repeal of sections 847 and 849 of said Code. On the other hand, if the power to render a deficiency judgment is purely statutory, as was intimated in *Devries v. Squires*, 55 Nebr., 438, it is equally

clear that as to pending suits such right was not abolished by the repeal of said sections, owing to the provisions of section 2, chapter 88, Compiled Statutes, quoted above. See *Kleckner v. Turk*, 45 Nebr., 176. The record conclusively shows that, long prior to the adoption of said repealing act, this suit was brought in the court below, a decree of foreclosure had been entered, the mortgaged premises sold thereunder, and the order denying a deficiency judgment against the church which is sought to be reviewed by this proceeding had been entered, and the cause docketed in this court. So that the repeal of said sections 847 and 849 can not be invoked to defeat the recovery of a deficiency judgment against the church. Sections 42 and 55, chapter 16, Compiled Statutes, follow:

"Sec. 42. The trustees or directors who may be appointed under the provisions of this subdivision, and their successors in office, shall have perpetual succession by such name as may be designated, and by such name may be legally capable of contracting and prosecuting and defending suits, and shall have capacity to acquire, hold, enjoy, dispose of, and convey all property, real and personal, which they may acquire by purchase, donation, or otherwise, for the purpose of carrying out the intentions of such society or association, but they shall not acquire or hold property for any other purpose."

"Sec. 55. No company or association incorporated under the provisions of this chapter shall employ its stock, means, assets, or other property, directly or indirectly, for any other purpose whatever than to accomplish the legitimate object of its creation."

The foregoing sections are taken from the chapter of the Compiled Statutes relating to corporations. Section 42 is especially applicable to religious societies, while section 55 is a general provision governing all incorporated companies. In view of these statutory provisions, the conclusion is irresistible that an incorporated

religious society, like the defendant herein, has no power to acquire, purchase or hold real estate for any purpose other than that of carrying out the purposes or objects for which the corporation was created. Argument or elaboration could not make the proposition plainer, or more readily understood. And it is equally clear that the buying and selling of real estate merely as a speculation, or for the profits realized, by a religious society, is forbidden by statute. The speculation in real estate by the First Christian Church of Lincoln, or rather by certain members of the board of trustees in the name of the church, was foreign to the legitimate objects of the church, and the contracts relating thereto are *ultra vires* and void. See Taylor, Private Corporations [3d ed.], sec. 297.

In 7 Am. & Eng. Ency. of Law [2d ed.], 718, the rule is stated thus: "As has already been stated, the power of a corporation to purchase real property is limited by the objects of its creation. Even where there are no express restrictions it can not purchase for a purpose foreign to those objects. When a corporation is created for the purpose of dealing in real estate its power to purchase the same is unlimited. But when a corporation is not organized to deal in land, as in case of railroad companies, banking companies, insurance companies, religious and educational corporations, etc., the purchase of land not needed in its business, for the mere purpose of holding and selling it again, is *ultra vires*. Nor can such a corporation purchase for any other purpose that does not tend directly to carry out its own legitimate objects." The text is fully sustained by numerous authorities cited in the notes on the same page. The record before us fails to show that the real estate venture entered into on behalf of the First Christian Church of Lincoln was to forward or promote the legitimate object of the association, but that the lands were bought, held and sold merely as a speculation.

It is argued in the brief of counsel for plaintiffs that

the proceeds derived from the sale of the lots were used to pay the indebtedness of the church and in the construction of its church building. It does not appear that the board of trustees of the First Christian Church so used and applied the money derived from the sales of the land. Moreover, this argument of plaintiff is aptly met by the following excerpt taken from the brief of defendant:

"If the mode of the application of the money is the factor that determines whether it is legitimate for a church to take part in a certain business, then a church corporation could secure a license and run a saloon or a billiard hall, or buy a circus outfit and tour the country, or trade horses, or construct a race track and pocket the receipts, provided only that the money so realized was applied to the payment of church obligations. It is not believed. that counsel for appellants are so unacquainted with the proper functions of a church as to insist upon their argument. It has never been held that the innumerable avenues of the business world are thrown open to a church board to enter in and glean a profit for the church. The very conception of a church forbids it. It would be against public policy for the churches of the land to enter into the bitter competition of the market place. Religion, as exemplified by ecclesiastical bodies under such a regime, would become a hiss and a by-word, and public and private morals would suffer thereby."

It is insisted that James Thompson was an innocent holder of the note, and therefore the defense of *ultra vires* can not be invoked against the plaintiffs. The *ultra vires* of the transaction being fully established by the evidence, the burden was cast upon the plaintiffs to prove that James Thompson acquired the note and mortgage as an innocent purchaser for value before maturity and without notice. No such evidence having been adduced on the trial, plaintiffs can not claim the protection with which the law clothes an innocent pur-

chaser of negotiable paper before due. Moreover, Mr. Thompson was chargeable with notice of the powers of the defendant church under the statute and its articles of incorporation.

Complaint is made in the brief of plaintiffs that the articles of incorporation of the defendant church do not comply with the provisions of section 169, chapter 16, Compiled Statutes, in that said articles do not state the limit of indebtedness of the society, nor the manner in which it may enter into contracts, and by reason thereof it is insisted that there are no limitations or restrictions upon the power of the church to contract debts, and that it may enter into contracts, and charge its property to the same extent as an individual might do. A short answer to this argument is that said section 169 was not in force when the First Christian Church was incorporated, but was adopted at a subsequent date, and does not control. The articles conformed to the statute existing at the time they were adopted and the defendant was incorporated. Again, said section 169 has no application to the case at bar, but relates alone, as expressly stated in the preceding section but one, to "churches, parishes, and societies of all religious bodies, sects, and denominations in this state having a central governing body with spiritual jurisdiction extending over the whole state, or a part thereof, being more than six counties." The First Christian Church of Lincoln does not belong to the class above described, and hence does not come within the provision of said section 169. The uncontradicted evidence shows that the board of trustees, or body which governs the defendant church, never authorized the purchase of the lands already mentioned, nor the sale or indorsement of the note in controversy, but that the lands were bought by two of the trustees who negotiated and indorsed the note, for and on behalf of the church, without having been authorized in that behalf by the board of trustees, and without any meeting of the said board being called or held to take

action in relation thereto. The trustees could only bind the corporation by acting together as a board. A majority of them in their individual names could not act for the board itself, and bind the corporation. It has been held that a majority of a school district board can not contract for the erection of a schoolhouse without a notice to, or participation therein, by the other members of the board. See *People v. Peters*, 4 Nebr., 254. The same principle has been recognized in *Hutchinson v. Ashburn*, 5 Nebr., 402; *State v. Saline County*, 18 Nebr., 422; *State v. School District*, 22 Nebr., 48. The following authorities are more or less in point on the question under consideration:  3 Thompson, Corporations, secs. 3905, 3950; *Ross v. Crochet*, 14 La. Ann., 823; *Cammayer v. United German Lutheran Church*, 2 Sandf. Ch. [N. Y.], 186; *Plymouth v. Plymouth County*, 16 Gray [Mass.], 341; *North Carolina R. Co. v. Swepson*, 71 N. Car., 350; *People v. Coghill*, 47 Cal., 361. *Scott v. Methodist Church*, 15 N. W. Rep. [Mich.], 891, cited by plaintiff, lacks analogy. There, two of the three members of a religious corporation borrowed money on the church property secured by a mortgage, without being previously authorized to make the loan by two-thirds of the voting members present at a meeting of the society called for that purpose, and the mortgage was sustained because the society, with knowledge of the facts, subsequently ratified the loan.

In the case at bar there is no ratification for two reasons: First, it is not shown that the proceeds arising from the sale of the note were accepted and retained by the First Christian Church with knowledge of the facts. In the next place, the transaction relating to the real estate speculation carried on by two of the trustees, with which was intimately connected the transfer of the paper in question, it being part of the same transaction, was *ultra vires*, and without the power of the board of trustees and could not be lawfully ratified by such board. The contract was incapable of ratification. See *Tullock v. Webster County*, 46 Nebr., 211; *Gutta Percha &*

*Rubber Mfg. Co. v. Village of Ogalalla,* 40 Nebr., 775.  The decree is

AFFIRMED.