## M. R. & M. S. WEBSTER V. THE TEXAS & PACIFIC MOTOR TRANSPORT COMPANY ET AL.

No. 7957.  Decided November 11, 1942.
Rehearing overruled December 16, 1942.
(166 S. W., 2d Series, 75.)

*Carl L. Phinney*, of Dallas, *Chas. F. Herring, Looney & Clark* and *Everett L. Looney*, all of Austin, for petitioners.

On the proposition that the permit granted by the Railroad Commission was the individual act of two members of the Commission without the knowledge or concurrence of the other member. People v. Whitridge, 129 N. Y. S. 295; King v. Guerra, 1 S. W. (2d) 373; State v. Chicago, & N. W. Ry. Co., 179 N. W. 378; 51 C. J. 116.

*R. S. Shepard, S. W. Lancaster, W. O. Reed*, all of Dallas, *Black, Graves & Stayton* and *W. A. Keeling*, all of Austin, *Gerald C. Mann*, Attorney General, *Geo. W. Barcus*, Assistant Attorney General, for respondent.

On the theory that the procedure followed by the Railroad Commission had legislative approval; that the evidence supported the finding by the commission that the local service requested was required, and that the Constitution does not forbid the operation of a motor truck line by a railroad company. Slaughter v. Yoakum County, 109 Texas 42, 195 S. W. 1129; Railroad Com. of Texas v. Texas & N. O. R. R. Co. 42 S. W. (2d) 1091; Texas Motor Coaches v. R. R. Com., 41 S. W. (2d) 1074.

MR. CHIEF JUSTICE ALEXANDER delivered the opinion of the Court.

This is an appeal by M. R. and M. S. Webster under the Motor Carriers' Act (Article 911a and 911b, Vernon's Texas Statutes) from an order of the Railroad Commission granting the Texas & Pacific Motor Transport Company a certificate of convenience and necessity to operate a common carrier motor carrier service over the highways of this State, from Fort Worth to Sherman, Texas. The district court approved the action of the Railroad Commission in granting the permit, and that judgment was affirmed by the Court of Civil Appeals. 159 S. W. (2d) 902.

The material question to be decided is whether there was such a hearing before the Railroad Commission at the time the permit was granted as was required by law.

At the time this certificate was granted the Railroad Commission of Texas was composed of Lon A. Smith, as chairman,

and Jerry Sadler and Col. Ernest O. Thompson. After the application for the permit was filed and the examiner had held a hearing and made his report, the record was presented to Mr. Sadler at his office. He examined the record and then took it to the office of Chairman Smith, and told him that he recommended that the application be granted. The record was left in Mr. Smith's office, without any decision being reached at that time. A few days later these two Commissioners met somewhere (the record does not show when nor where) in an informal unscheduled meeting, without any previous notice thereof having been given, and agreed that the certificate should be granted. The matter was not considered at any regular meeting, nor at any previously called special meeting. Colonel Thompson had no notice that any meeting was being held for the purpose of considering the application. He was opposed to the granting of the certificate. He was not at the meeting and had no opportunity to attend same. In fact, it is undisputed that at the time this application was passed on, it was not the practice of the Railroad Commission to ever hold any regular or specially called meeting of the Commission as a whole, for the purpose of passing on applications of this kind. At that time it was the practice for one Commissioner to examine the record and then take it to either one of the other Commissioners, whenever and wherever he could be found, and get his approval. No notice was given to the third member that a meeting was to be held for the purpose of passing on the application. The Commission kept no minute of any such meeting of the Commissioners.

The Railroad Commission of this State is composed of three members. Vernon's Texas Statutes, Article 6447. As used in our statutes creating and regulating the Railroad Commission, the term "Commission" means "the Railroad Commission of Texas," and the term "Commissioners" means "the members of the Railroad Commission of Texas." Vernon's Texas Statutes, Article 6444; Article 911b, Sec. 1, Subsec. (b).

Article 911b, Section 5, provides as follows:

"No motor carrier shall hereafter operate as a common carrier for the transportation of property for compensation or hire over the public highways of this State without first having obtained from the Commission, under the provisions of this Act, a certificate declaring that the public convenience and necessity requires such operation; * * *." (As amended Acts 1931, 42nd Leg., p. 480, ch. 277, sec. 5.)

Article 911b, Section 14, provides:

"The Commission shall have the power and authority under this Act to hear and determine all applications of motor carriers; to determine complaints presented to it by such carrier, by any public official or by any citizen having an interest in the subject matter of the complaint, or it may institute and investigate any matter pertaining to motor carriers upon its own motion. The Commission, or any member thereof, or authorized representative of the Commission, shall have power to compel the attendance of witnesses, swear witnesses, take their testimony under oath, make record thereof, and if such record is made under the direction of a Commissioner, or authorized representative of the Commission, a majority of the Commission may, upon the record, render judgment as if the case had been heard before a majority of the members of the Commission. The Commission shall have the power and authority under this Act to do and perform all necessary things to carry out the purpose, intent and provisions of this Act, whether herein specifically mentioned or not, and to that end may hold hearings at any place in Texas which it may designate." (Acts 1929, 41st Leg., p. 705, ch. 314.)

A careful reading of the above statute makes it clear that it was the intention of the Legislature that the Railroad Commission of this State should be composed of three members, and that the Commission, acting as such, and not the individual Commissioners, should have the authority to grant or refuse applications for permits to operate as common carriers over the highways of this State.

It is a well established rule in this State, as well as in other States, that where the Legislature has committed a matter to a board, bureau, or commission, or other administrative agency, such board, bureau, or commission must act thereon as a body at a stated meeting, or one properly called, and of which all the members of such board have notice, or of which they are given an opportunity to attend. Consent or acquiescence of, or agreement by the individual members acting separately, and not as a body, or by a number of the members less than the whole acting collectively at an unscheduled meeting without notice or opportunity of the other members to attend, is not sufficient. 34 Tex. Jur. 457; 51 C. J. 62; State v. Union Light, Heat & Power Co., 47 N. D. 402, 182 N. W. 539;

McNolty v. Board of School Directors, 102 Wis. 261, 78 N. W. 439; People v. Whitridge, 144 App. Dis. 486, 129 N. Y. S. 295; City of Floydada v. Gillam (Tex. Civ. App.), 111 S. W. (2d) 761; King v. Guerra (Tex. Civ. App.), 1 S. W. (2d) 373; Schwanbeck v. People ex rel. Smith, 15 Colo. 64, 24 Pac. 575; School District No. 39, Pattawatomie County v. Shelton, 26 Okla. 229, 109 Pac. 67, 138 Am. St. Rep. 962; Murphy v. City of Albina, 22 Ore. 106, 29 Pac. 353, 29 Am. St. Rep. 578; Nason v. Directors of Poor for Erie County (Pa.), 126 Pa. 445, 17 Atl. 616; Thompson v. West 59 Neb. 677, 82 N. W. 13; First National Bank of Marlin v. Dupuy (Tex. Civ. App.), 133 S. W. (2d) 238; McAlister v. City of Frost (Tex. Civ. App.), 131 S. W. (2d) 975.

In 34 Texas Jurisprudence, 457, it is said:

"In order that the acts of a governmental or administrative board may be valid it must act as a body. Consent or acquiescence of, or agreements by, the individual members acting separately and not as a body do not bind the board of the political subdivision which they represent, and all persons are chargeable with knowledge that such is the case."

In 51 Corpus Juris, 62, it is said:

"A public utility commission must act as a body and not as an aggregate of individuals, and, while under some statutes individual commissioners may hold hearings, the final order must be that of the commissioner as a whole, acting at a stated meeting or one properly called and of which all the commissioners had notice or which they were given an opportunity to attend; and an order made by only one commissioner, although with the consent of the other commissioners, is not a valid order of the commission."

The purpose of the above rule, which requires the board to act as a body at a regular meeting or at a called meeting, upon proper notice, is to afford each member of the body an opportunity to be present and to impart to his associates the benefit of his experience, counsel, and judgment, and to bring to bear upon them the weight of his argument on the matter to be decided by the Board, in order that the decision, when finally promulgated, may be the composite judgment of the body as a whole. The Supreme Court of Kansas has ably expressed the object of the rule as follows:

"Nor is this merely an arbitrary rule, but one founded upon the clearest dictates of reason. Whenever a matter calls for the exercise of deliberation and judgment, it is right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all the persons to whom has been intrusted the decision. It may be that all will not concur in the conclusion; but the information and counsel of each may well affect and modify the final judgment of the body. Were the rule otherwise, it might often happen that the very one whose judgment should and would carry the most weight, either by reason of his greater knowledge and experience concerning the special matter, by his riper wisdom and better judgment, or by his greater familiarity with the wishes and necessities of those specially to be affected, or from any other reason, and who was both able and willing to attend, is through lack of notice an absentee. All the benefit, in short, which can flow from the mutual consultation, the experience and knowledge, the wisdom and judgment of each and all the members, is endangered by any other rule. Again, any other rule would be fraught with danger to the rights of even a majority, as, when legally convened the ordinary rule in the absence of special restriction being that a quorum can act and a majority of the quorum bind the body, it would, but for this rule, often be in the power of an unscrupulous minority to bind both the body and the corporation for which it acts to measures which neither approve of. Thus, were the body composed of twelve members, a quorum of seven could act, and a majority of that quorum, four, could bind the body. An unscrupulous minority of four by withholding notice to five, might thus bind both the body and the corporation. Reason therefore and authority unite in saying that notice to all the members to whom notice is practicable, is essential to a legal special session." Paola & Fall River Ry. Co. v. Commissioners of Anderson County, 16 Kan. 302, 309.

▪ The Legislature has committed to the Railroad Commission the conservation of the vast natural resources of this State, the fixing of utility rates, and the regulation of the transportation system over both the railroads and the highways of the State. Necessarily, the Commission decides matters of vast importance to the public at large, as well as the litigants who appear before it. Certain presumptions are indulged in favor of its orders and the soundness of its conclusions. Vernon's Texas Statutes, Art. 911b, Sec. 20; Art. 6049c, Sec. 8; 34

Tex. Jur. 712; 31 Tex. Jur. 1169; Railroad Commission v. Shell Oil Co., Inc., 139 Texas 66, 161 S. W. (2d) 1022. The Legislature has committed the decision of these important matters to a Commission composed of three members, and has thus evidenced an intention that such matters should be decided by that body acting as such, and it is but right that all parties and interests to be affected by the result should have the benefit of the counsel and judgment of all of the persons to whom has been entrusted the decision. We do not mean to hold that all members of the Commission must be present to constitute a quorum in order to authorize the transaction of business. What we hold is that the members of the Commission must act as a body with a quorum present, and all members must be given an opportunity to be present if it is reasonably convenient for them to do so.

In the case at bar Colonel Thompson, one of the members of the Commission, was denied the opportunity of being present at the meeting at which this application was considered, and of presenting his argument against the petition. He was opposed to the granting of the certificate, and if he had had the opportunity of being present he might have persuaded his associates not to grant it.

Counsel for the applicant asserts that at the time the application in question was acted on it was the custom and practice of the Railroad Commission to consider itself in session at all times, and since all the members of the Commission were familiar with that practice, the law would presume that each member would keep up with the business of the Commission and make himself available at any time that a meeting was to be held, thus dispensing with the necessity of notice of such meeting. It appears, however, that while the Commission did indulge the presumption of continuous session, there was no certainty as to the hour nor the place of the prospective meeting. The meetings appear to have been held wherever and whenever two of the members happened to meet. Merely indulging the presumption of continuous session under these circumstances would not solve the problem of affording a reasonable opportunity to all members to be present. We are of the opinion that the application was not passed on by the Commission as a body, in the manner contemplated by law. We should not be understood as holding that an order rendered

under the circumstances herein complained of would be held to be void upon collateral attack. This was a direct attack by suit brought for that purpose, as provided in the statute, immediately after the order had been entered.

The applicant relies on the holding of the Court of Civil Appeals in Sunshine Bus Lines, Inc. v. Railroad Commission, 149 S. W. (2d) 228. This Court granted an application for a writ of error in that case, but a settlement was reached and the suit dismissed before a decision was made by this Court. Any holdings therein contrary to this opinion are hereby overruled.

The judgments of the trial court and the Court of Civil Appeals are reversed, and the order of the Railroad Commission granting the certificate is set aside, but without prejudice to the right of the Railroad Commission to again consider the application for the certificate. '

Opinion delivered November 11, 1942.

Rehearing overruled December 16, 1942.