ALBIN H. BOWMAN, Plaintiff, v. BLOOMFIELD MANAGEMENT, INC., Defendant.

City Court of the City of New York, Trial Term, Kings County, March 16, 1949.

*Sidney L. Aronson* for plaintiff.

*George Zinberg* and *Julius Zizmor* for defendant.

BENJAMIN, J. This is an action for broker's commissions. The jury, after trial, reached a verdict in favor of the plaintiff in the sum of $1,485, and interest. On the trial of the action the court reserved decision on a motion made at the close of the plaintiff's case for a dismissal of the cause of action. The court likewise reserved decision upon such motion renewed at the end of the entire case. It now has before it for determination the aforesaid motions, as well as the motions made to set aside the verdict as contrary to law and the evidence.

The facts are as follows: Plaintiff, a licensed real estate broker, was employed by the defendant for the purpose of selling an apartment house owned by the defendant. Subsequently, he interested a prospective purchaser, negotiations were conducted in the office of counsel for the defendant and an agreement reached as to all the essential terms of the contract. It was then disclosed that the prospective purchaser was the A. M. E. Zion Church of Brooklyn, a religious corporation organized pursuant to the laws of the State of New York. Defendant, through its counsel, thereupon refused to enter into the contract upon the ground that a contract by such a corporation for the purchase of an apartment house, not for religious purposes, but purely as an investment, would be *ultra vires*.

The evidence establishes that the contemplated purchase was not for religious purposes but was merely a vehicle for the investment of surplus funds of the church. That the proposed contract had been authorized by the governing body of the church and that the church corporation was in all respects ready, willing and financially able to acquire such property. Whatever questions of fact may have existed with respect to any of the foregoing prerequisites to recover, have been resolved in favor of the plaintiff by the jury's verdict, which was amply supported by the evidence. It likewise is established by the verdict of the jury that there was a meeting of minds as to all the essential terms of the contract and that the only reason for the failure to

execute and consummate the transaction was the refusal on the part of the defendant to sell to a religious corporation.

The gravamen of the problem before this court is whether the defendant was justified in its position that such a contract would have been *ultra vires* and void and, accordingly, the prospective purchaser was not one able to take within the contemplation of law. If this position falls, the verdict for the plaintiff must stand.

Thus, there is presented for determination the apparently simple question as to whether a religious corporation, organized under the laws of the State of New York, may invest its funds in real estate, not for a purpose connected with the ecclesiastical function of such corporation, but purely for speculation or profit.

Briefs submitted by counsel for both sides state that the question is novel in this State. In any event, no authorities have been submitted to this court indicating any decisions in our State holding directly upon this question.

A corporation being an artificial entity, a mere creature of law, is limited in its powers to such as are expressly given to it by law, or necessarily incidental to powers so conveyed. We are required, therefore, to look to the provisions of the Religious Corporations Law, governing the powers of religious corporations in our State, as well as to the General Corporation Law of the State of New York, for the purpose of determining whether this right of general investment comes within the scope of existing corporate power. It is recognized that the problem is a broad one, capable of serious and important impact, since many religious corporations are or may become possessed of large sums of money available for general investment.

The powers of religious corporations with respect to the handling of their funds are expressly set forth in section 5 of the Religious Corporations Law, which provides as follows: " The trustees of every religious corporation shall have the custody and control of all the temporalities and property, real and personal, belonging to the corporation and of the revenues therefrom, and shall administer the same in accordance with the discipline, rules and usages of the corporation and of the ecclesiastical governing body, if any, to which the corporation is subject, and with the provisions of law relating thereto, for the support and maintenance of the corporation, or, providing the members of the corporation at a meeting thereof shall so authorize, of some religious, charitable, benevolent or educational object conducted by said corporation or in connection with it, or with the denomination, if any, with which it is connected; *and*

*they shall not use such property or revenues for any other pur-*
*pose or divert the same from such uses.* They may transfer all
or any part of the real or personal estate of such corporation
to such bank or trust company organized or existing under the
laws of the state of New York as may be designated by them or
to a holding company, organized under the laws of the state of
New York, of the same religious denomination, such property
to be held in trust and to be invested and reinvested *in such
manner as trust funds are allowed to be invested,* under the laws
of the state * * *.'' (Italics supplied.)

Supplementing the powers expressly created by section 5, the
Religious Corporations Law, by express enactment, makes
further provision for the right of such corporation to acquire
property for use as church chapels, mission houses, domestic and
foreign, parochial buildings and buildings of like character, as
well as cemetery and burial grounds. The law even makes
express provision for the right to acquire parsonages for district
superintendents or camp meeting grounds. The entire scheme
of the law is one where express powers are granted wherever the
Legislature deems such grant necessary as a specific amplifica-
tion of section 5, or an exception to its restrictions.

It will be observed that section 5 expressly prohibits the
corporate trustees from diverting the property or revenues of
the corporation from any purpose other than the ecclesiastical
or affiliated uses of the religious corporation.

It is argued by the plaintiff that since section 5 gives to the
trustees the right to hold all the property, real and personal,
of the corporation for the support and maintenance of the cor-
poration, that the trustees have the power to invest the funds
in any manner determined upon by them as long as the revenues
from such investments are used for the ecclesiastical or allied
purposes of the corporation. It is further contended by the
plaintiff that the trustees under such circumstances would be
answerable only for such improvidence or misconduct in the
making of investments as would be sufficient to charge directors
of any other corporation in the event of the waste of corporate
assets. The plaintiff urges, therefore, that the corporation,
having been authorized by its trustees to enter into this contract,
was one ready, willing and able within the contemplation of law;
that the contract was not *ultra vires* and that its propriety was
one for internal policing by the membership of the religious
corporation itself and is not an objection which could be raised
by the prospective seller of the property. They argue further
that section 5 of the Religious Corporations Law, invests the

general corporation trustees with full and complete title to all funds and contains no express strictures upon the character of investments which such trustees can make, as distinguished from the limitations placed by the section upon investment trustees.

The force of this argument is compelling but the court finds itself unable to accept it. Public policy dictates that funds contributed by the general community or by the membership of a church corporation, intended for ecclesiastical purposes, shall not be diverted into business investments, necessarily speculative in nature.

It seems hardly necessary to embellish this theme. The temptation to make speculative investments in the quest for additional funds for new construction or extensive alterations to existing church properties, or even for maintenance purposes, is one which the law cannot encourage by a so-called " liberal " construction of the powers of the corporate trustees.

Social and spiritual aims cannot be budgeted for, with worthless mining or oil stocks or acreage in the Sahara Desert. That the making of such investments would be improvident and subject the trustees to personal liability is inadequate protection for the congregation. A building program long planned and devotedly served by the tireless efforts of warm-hearted volunteers, can hardly be implemented by the best law suit quite as well as by money in the treasury.

Accordingly, a truly liberal construction of the section requires appropriate limitation upon the powers of the corporate trustees so that the spiritual and social objectives of the congregation may not be aborted by dissipation of its funds through speculative investments.

Apart, however, from the basic philosophy of the problem, we must search for the legislative intent. The language of section 5 does confer upon the trustees complete title to the property, real and personal of the corporation, for the support and maintenance of the corporation. This does not, however, mean the right to make business investments even for income to support the church, but, rather the mere power to employ such funds as may come into their possession for the payment of the necessary expenditures of the ecclesiastical and kindred functions of such religious corporation. That such is the clear legislative intent is evident from the express provisions of section 5 which empower the turning over of surplus moneys and properties in the possession of the corporate trustees to investment trustees, who, by the terms of the statute are expressly limited to the making of investments legal for trust funds. It cannot

be argued that the law intended to give the corporate trustees themselves the power to make nonlegal investments, as distinguished from the limitations placed upon the investment trustees contemplated under the law. Rather does the section clearly contemplate that the corporate property, real and personal, shall be ordinarily employed only for the ecclesiastical functions of the corporation and that in the event the corporation finds itself in the fortunate position of being possessed of funds beyond its normal needs, that it shall have the power to augment its income through the setting up of investment trustees with power to invest such surplus funds in legal investments. That such is the legislative intent is further evident from the particularity with which the succeeding sections of the Religious Corporations Law expressly grant power to acquire various types of property for affiliated church uses. If section 5 were intended to grant full power to the corporate trustees to use the funds for the purchase of real estate, then, these provisions granting express power to acquire certain types of real properties, as heretofore enumerated, served no necessary purpose and are mere legislative supererogation.

Limited as the decisions have been upon this subject in this State, the matter has, nevertheless, been considered in other jurisdictions. In *Thompson* v. *West* (59 Neb. 677) a church having surplus funds purchased a tract of vacant land for speculative purposes. The Nebraska Court ruled such contract to be *ultra vires* and unenforcible. Likewise, in *Harriman* v. *First Bryan Baptist Church* (63 Ga. 186) a contract, pursuant to which a church went into the business of chartering boats in order to obtain funds necessary for the support and maintenance of the church, was ruled *ultra vires*. Decisions to like effect have been reached in various other jurisdictions of our sister States and in the Federal Courts. Prohibition against ownership by a Baptist Church, organized under the laws of New York, of stock of a national bank, is implied from failure to grant the power. (*Haight* v. *First Baptist Church of Camillus, N. Y.*, D. C. N. Y. 1942, 42 F. Supp. 925.)

The conclusion appears inescapable, therefore, that the religious corporation's powers must be held to be limited to those expressly granted by the provisions of the Religious Corporations Law, that the validity of any act of the trustees must be viewed in the light of the powers granted to them by such law and that such powers do not include the right to invest even surplus funds for business or speculative uses. The proposed contract, therefore, was *ultra vires* and void and defendant was within its rights in refusing to enter into an illegal agreement.

Accordingly, the motions made herein to set aside the verdict of the jury as being contrary to the weight of evidence, are denied. The motion made to set aside the verdict as contrary to law, is granted. Motions made to dismiss the complaint upon the ground that plaintiff has failed to make out a cause of action upon the law, are likewise granted. The verdict of the jury is set aside and the complaint dismissed. Appropriate exceptions to both sides. Twenty days' stay and thirty days to make a case are allowed.