# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

January 6, 2009

Mr. Robert Scott
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0689

Re: Whether section 11.051(a-1), Education Code, alters the common-law standard for determining the number of votes necessary for a school district board of trustees to act in its official capacity (RQ-0725-GA)

Dear Commissioner Scott:

Section 11.051(a-1), Education Code, provides that

> [u]nless authorized by the board, a member of the board may not, individually, act on behalf of the board. The board of trustees may act only by *majority vote of the members present* at a meeting held in compliance with Chapter 551, Government Code, at which a *quorum of the board is present and voting.*

TEX. EDUC. CODE ANN. § 11.051(a-1) (Vernon Supp. 2008) (emphasis added). You ask whether section 11.051(a-1) changes the common-law standard for determining the majority vote of a board of trustees of an independent school district.[1] You ask additional questions involving specific hypothetical voting scenarios should we determine that section 11.051(a-1) changes the standard. *See* Request Letter at 2.

Under the common-law standard, a majority vote is generally determined from a majority of those present and voting, excluding abstentions (assuming a quorum is present). *See Webster v. Tex. & Pac. Motor Transp. Co.*, 166 S.W.2d 75, 76–77 (Tex. 1942) (recognizing that where the Legislature has committed a matter to a public body, the public body must act as a body and not by individual members of the body acting separately); *State v. Etheridge*, 32 S.W.2d 828, 830–31 (Tex. Comm'n App. 1930, judgm't adopted) (favorable vote by *majority present and voting* is generally sufficient to adopt a measure). In practical terms, this means that "were the body composed of

---

[1]Request Letter (*available at* www.texasattorneygeneral.gov).

twelve members, a quorum of seven could act, and a majority of that quorum, four, could bind the body."[2] *Webster*, 166 S.W.2d at 77.

In construing statutes, the cardinal rule is to ascertain the intent of the Legislature. *See In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001). With respect to the abrogation of the common-law, it is certainly true that "statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended." *Energy Serv. Co. of Bowie, Inc. v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007); *see also Gallagher Headquarters Ranch Dev., Ltd. v. City of San Antonio*, No. 04-07-00325-CV, 2008 WL 2828718, at *6 (Tex. App.—San Antonio July 23, 2008, pet. filed); *Bruce v. Jim Walters Homes, Inc.*, 943 S.W.2d 121, 122–23 (Tex. App.—San Antonio 1997, writ denied).

As you point out, the text of section 11.051(a-1) does not itself answer your question. Request Letter at 1–2. You suggest that the phrase in section 11.051(a-1)—"may act only by majority vote of the members present"—could be understood as a change to the common law by requiring a vote of a majority of the members physically present at the meeting. *Id.* at 1; *see also supra* note 2. And, you further suggest, the phrase—"at which a quorum is present and voting"—could be understood to change the common law by requiring a vote from each member of the quorum. Request Letter at 2; *see also supra* note 2. Or, you continue, the entire sentence could be seen as an attempt to codify the common-law standard, while also referring to the requirements of the Open Meetings Act.[3] *See* Request Letter at 2; *see also* TEX. GOV'T CODE ANN. §§ 551.002 (Vernon 2004) (requiring meetings of governmental bodies to be open to the public), 551.001(3)(E) (Vernon Supp. 2008) (defining governmental body to include a school district board of trustees). We agree that on its face section 11.051(a-1) could be construed to alter how the majority vote of a school board is determined. But it is not clear from the text of section 11.051(a-1) that the Legislature intended to abrogate the common law with respect to the majority vote requirement. Before we construe section 11.051(a-1) to effect such a change we must "look carefully to be sure [the change of the common law is] what the Legislature intended." *Energy Serv. Co. of Bowie, Inc.*, 236 S.W.3d at 194. Accordingly, we consider extra-textual factors to determine whether the Legislature intended to change the standard. *See* TEX. GOV'T CODE ANN. § 311.023(1)–(3) (Vernon 2005) (authorizing consideration of, among other things, the object sought to be obtained, the circumstances under which the statute was enacted, and the legislative history).

---

[2]You provide factual scenarios to illustrate how section 11.051(a-1) might impose requirements that differ from the common-law standard. *See* Request Letter at 1–2. You describe a meeting of a seven-member board at which all seven members are present and at which a "motion received three votes for and two against with two abstentions." *Id.* Such a "measure would pass under the common-law rule but would not have received affirmative votes of a majority of the members present." *Id.* at 2. You also describe a seven-member board voting on a measure with two in favor, one against, and four abstentions. *See id.* In this scenario, the number of members fixed for a quorum would not have cast a vote. *See id.*

[3]If one were to construe section 11.051(a-1) to restate the existing requirement that a meeting comply with the Open Meetings Act and as a codification of the common-law standard, the phrase "and voting" is likely a misplaced modifier such that the section should be read as: "The board of trustees may act only by majority vote of the members present [and voting] at a meeting held in compliance with Chapter 551, Government Code, at which a quorum of the board is present."

The stated purpose of House Bill 2563 that enacted section 11.051(a-1) is to clarify "the precise roles of and relationship between [school district boards of trustees] and superintendents." Sen. Research Ctr., Bill Analysis, Tex. Comm. Substitute H.B. 2563, 80th Leg., R.S. (2007); *see also* Hearings on Tex. Comm. Substitute H.B. 2563 Before the Sen. Comm. on Educ., 80th Leg., R.S. (May 17, 2007, Part II) (statement of Senator Leticia Van de Putte) ("This [bill] really details the major responsibilities of [a] school board of trustee in a way that parallels the major responsibilities of the superintendent . . . . It clarifies the relationship between the board of trustees and superintendent in carrying out the governance and management function of the school district."). And House Bill 2563 was enacted in circumstances under which anecdotal evidence and a newspaper article highlighted complaints against *individual* school board members that "relat[ed] to operating procedures, micromanagement of the district's daily operations, and the threatening of district employees." Sen. Research Ctr., Bill Analysis, Tex. Comm. Substitute H.B. 2563, 80th Leg., R.S. (2007); *see also* Hearings on Tex. H.B. 2563 Before the House Comm. on Pub. Educ., 80th Leg., R.S. (Apr. 17, 2007) (statement of Representative Kelly Hancock) (referring to article in Fort Worth Star Telegram discussing complaints made to Texas Education Agency about individual school board members' inappropriate involvement in operations of school district).

Moreover, the legislative history of House Bill 2563 indicates that the bill was meant to define the role of a school board member and distinguish it from the role of a superintendent—as a kind of job description for a board trustee. In the hearings before the House Committee on Public Education and the Senate Committee on Education, the testimony of witnesses and the bill's authors focused solely on the provisions in the bill pertaining to the respective authority of, and relationship between, the school board and the superintendent. *See* Hearings on Tex. H.B. 2563 Before the House Comm. on Pub. Educ., 80th Leg., R.S. (Apr. 17, 2007) (statements of Representative Kelly Hancock; David Duty, Tex. Ass'n Sch. Bds.; Mike Moses, Tex. Bus. & Educ. Coal.); Hearings on Tex. Comm. Substitute H.B. 2563 Before the Sen. Comm. on Educ., 80th Leg., R.S. (May 17, 2007, part II) (statement of Senator Leticia Van de Putte). The purpose, circumstances of enactment, and the legislative history indicate to us that the Legislature intended House Bill 2563 to better define the role of a school board trustee and to segregate the board's role and duties from those of the superintendent, particularly with respect to governance and management duties. There is no indication that the Legislature intended to alter the common-law majority vote requirement for a school district board of trustees.

Thus, absent clear indication in the text of section 11.051(a-1) that the Legislature intended to abrogate the common-law standard for determining a majority vote, and because we find no indication in the extra-textual considerations of any such legislative intent, we conclude that section 11.051(a-1) does not change the standard for determining the number of votes necessary for a school district board of trustees to act in its official capacity. Because we answer your first question in the negative, we need not address your additional questions.

## S U M M A R Y

Section 11.051(a-1), Texas Education Code, does not alter the common-law standard for determining the number of votes necessary for a school district board of trustees to act in its official capacity.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee