Paul FIELDING, Appellant,

v.

Charles S. ANDERSON, Appellee.

No. 11–94–081–CV.

Court of Appeals of Texas, Eastland.

Nov. 22, 1995.

Rehearing Overruled Jan. 11, 1996.

John J. Gitlin, Nanuet, NY, Joseph W. Spence, Cynthia Hollingsworth, Gardere & Wynne LLP, Dallas, Ruth A. Kollman, Kollman & Kubicki, Dallas, for appellant.

Gretchen Benolken, Claudia E. Fogle, Fogle & Benolken, Dallas, for appellee.

Before ARNOT, C.J., DICKENSON, J., and McCLOUD, S.J.*

ARNOT, Chief Justice.

Charles Anderson was the executive director of the Dallas Area Rapid Transit Authority (DART). Marvin Lane was the Chairman of the Board of DART. In January of 1992, after visiting with other members of the Board, Lane informed Anderson that a majority of the Board wanted Anderson to resign. Anderson and Lane agreed to a tentative severance package in accordance with Anderson's employment contract. Paul Fielding, a Dallas City Councilman and a vocal and public opponent of both DART and Anderson, filed this suit against DART, Anderson, and Lane seeking a writ of mandamus and a declaratory judgment that DART, Anderson, and Lane had violated TEX.REV.CIV.STAT.ANN. art. 6252–17 (Vernon 1970), the Texas Open Meetings Act,[1] and seeking to have the monies paid to Anderson returned.

Fielding settled his lawsuit with DART. Both Fielding and Anderson moved for a partial summary judgment. The trial court denied Fielding's motion and granted Anderson's motion. The trial court awarded Anderson attorney's fees in the amount of $92,464.77. Subsequently, Fielding filed a nonsuit in his action against Lane, making the judgment final. Fielding appeals the summary judgment and the award of attorney's fees.[2]

We hold that the trial court was correct in granting Anderson a summary judgment and in denying Fielding a summary judgment.[3] First, we note that Fielding's allegations of violations of the Texas Open Meetings Act are against DART with whom he has settled and not against Anderson individually. Second, the summary judgment evidence conclusively establishes that the April meeting of DART was held in accordance with the Texas Open Meetings Act. Also, we find that the trial court was correct in awarding attorney's fees. We affirm the judgment of the trial court.

The summary judgment evidence shows that Anderson was hired as executive director of DART on November 10, 1986. Anderson and DART executed a written employment agreement. The contract provided that, upon separation, Anderson would be entitled to certain benefits.[4] Additionally, the contract provided that it would be subject to DART's personnel rules and provisions covering benefits if those benefits were not inconsistent with the contract.[5]

---

* Austin McCloud, Retired Chief Justice, Court of Appeals, 11th District of Texas at Eastland sitting by assignment.

1. Article 6252–17 was the applicable law at the time of this dispute. The Texas Open Meetings Act has been recodified and is now TEX.GOV'T CODE ANN. § 551.001 et seq. (Vernon 1994).

2. We have received an amicus curiae brief from Freedom of Information Foundation. See TEX. R.APP.P. 20.

3. When a summary judgment order does not state the specific grounds upon which it is granted, a party appealing from such order must show that *each* of the independent arguments alleged in the motion is insufficient to support the order. (Emphasis added) *Tilotta v. Goodall,* 752

S.W.2d 160 (Tex.App.—Houston [1st Dist.] 1988, writ den'd); *McCrea v. Cubilla Condominium Corporation N.V.,* 685 S.W.2d 755 (Tex.App.— Houston [1st Dist.] 1985, writ ref'd n.r.e.).

4. The contract provides in Paragraph X:

   Termination and Severance Pay
   (a) In the event of his involuntary separation as Executive Director, Anderson shall be entitled to receive a lump sum payment equal to one-half of Anderson's annual base salary then in effect.

5. The contract provides in Paragraph XI:

   Other Terms and Conditions of Employment
   In addition to the benefits provided in this Agreement, all provisions of DART personnel

Lane visited informally with various members of the Board individually about Anderson's termination. On January 16, 1992, Lane privately suggested to Anderson that a majority of the Board wanted him to resign. Lane and Anderson reached a tentative agreement as to the terms of Anderson's termination package. On January 17, after more conversation, the agreement was reduced to writing.[6]

Under the terms of his contract, Anderson was entitled to receive payment equal to six months of his then current salary if his termination was involuntary. "Involuntary separation" is defined in Paragraph X in the contract as a "suggestion, whether formal or informal, by a majority of DART's Board that he resign." On January 21, 1992, DART issued a check to Anderson for $52,415.27 and, on February 28, 1992, issued a check to Challenger, Gray, and Christmas, an executive placement firm, for $21,750.00 for their services.

When complaints were made that Lane and DART's meeting in January was in violation of the Texas Open Meetings Act, DART gave notice of a special meeting to be held on March 17, 1992. At that meeting, the Board accepted Anderson's involuntary separation and appointed an interim executive director. Anderson left DART's employment on March 31, 1992.

Under continued criticism that the Board had not acted in accordance with the Texas Open Meetings Act, Anderson and the executive placement firm returned the money. Notice of a special meeting was again given and posted. On April 7, 1992, DART met, accepted Anderson's involuntary resignation, and approved the same termination package. The minutes of that meeting indicate that Fielding was present and that he made his

objections to the Board concerning Anderson's severance package. Pursuant to the April 7th resolution, Anderson and the executive placement firm were paid the same amount that they had previously received.

In each of his first five points of error, Fielding contends that the trial court erred in granting a summary judgment for Anderson and in not granting a summary judgment for him.[7] Fielding argues that as a matter of law the meetings between Anderson and Lane in January were void and illegal because DART failed to comply with the Texas Open Meetings Act; that as a matter of law the March and April meetings were void because DART attempted to ratify the January agreement, an illegal act; that a question of fact exists as to whether DART's posting of the March and April meetings was proper; and that DART's payment of the benefits to Anderson was extra compensation as prohibited by TEX. CONST. art. III, §§ 44 and 53.

When reviewing a summary judgment, this court will adhere to the following standards:

(1) The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

TEX.R.CIV.P. 166a; *Goswami v. Metropolitan Savings and Loan Association,* 751 S.W.2d 487, 491 (Tex.1988); *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548–549 (Tex.1985); *City of*

rules and provisions of benefits relating to vacation, sick leave, holidays, and other fringe benefits and working conditions, as they now exist or may be amended, also shall apply to Anderson as they would to other employees of DART, insofar as those provisions, regulations, and rules are not inconsistent with this Agreement.

**6.** The agreement provided that Anderson would receive:

(1) An amount equal to six months of base salary;

(2) Accrued vacation hours;

(3) Compensation to his retirement account;

(4) Health and life insurance coverage through August 30, 1992;

(5) Services of an executive placement firm until Anderson found a new job, but not to extend beyond August 30, 1992; and

(6) Time away from his duties at DART to search for new employment, which time would not be charged against accrued vacation time.

**7.** See and compare *Malooly Brothers, Inc. v. Napier,* 461 S.W.2d 119 (Tex.1970).

*Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). When both appellant's and appellee's motions for summary judgment are properly before the trial court, all evidence accompanying both motions is considered. *DeBord v. Muller,* 446 S.W.2d 299, 301 (Tex.1969).

Fielding contends that the trial court erred in not granting his motion for summary judgment. In his second amended petition, the live pleading in this suit, Fielding brought a cause of action for mandamus and declaratory judgment against DART, Lane, and Anderson alleging violations of the Texas Open Meetings Act.[8] In his pleadings and in his motion for summary judgment, all of Fielding's factual allegations of violations of the Open Meetings Act are against DART. The actions against DART and Lane were dismissed. In contrast, the pleadings allege that Anderson committed gross negligence and official misconduct by accepting the benefits of the severance package.

The thrust of Fielding's remaining suit, after settlement with DART, is to prevent Anderson from receiving any compensation from DART. That cause of action is against DART, not Anderson. Fielding was given the opportunity to appear at a public hearing of DART to complain of the termination package. DART authorized the package by a public vote in compliance with the Texas Open Meetings Act. Fielding's complaint about the amount of the termination package has been heard, considered, and rejected by the DART Board in a public forum.

■ There are no factual allegations in either the pleadings or the summary judgment evidence that would support a cause of

action in gross negligence by Anderson in this case.[9] There are no factual allegations in the pleadings or in the summary judgment evidence that support any act of official misconduct by Anderson. Therefore, as a matter of law, Fielding has not stated a cause of action against Anderson.[10] Accordingly, we overrule Fielding's points of error that the trial court erred in not granting his motion for summary judgement.

We now address Fielding's fourth and fifth points of error which urge that the trial court erred in granting Anderson's motion for summary judgment. In his fifth point of error, Fielding complains that the notice for the April meeting was invalid.

Article 6252–17, section 3A(f) provides:

A governmental body ... shall have a notice posted at a place convenient to the public in its administrative office, and shall also furnish the notice to the Secretary of State, who shall then post the notice on a bulletin board located in the main office of the Secretary of State at a place convenient to the public; and it shall also furnish the notice to the county clerk of the county in which the administrative office ... is located, who shall then post the notice on a bulletin board located at a place convenient to the public in the county courthouse.

Article 6252–17, section 3A(h) states:

Notice of a meeting must be posted in a place readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting.

---

8. Article 6252–17, the Texas Open Meetings Act, prohibits a closed meeting between a quorum of members of a governmental body and any other person concerning any issue of public business. See Sections 1(a), 1(b), and 2(a). Governmental body means: "[A]ny board, commission, department, committee, or agency within the executive or legislative department of the state, which is under the direction of one or more elected or appointed members." See Section 1(c).

9. A summary judgment should not be based on a pleading deficiency that could be cured by amendment. *Massey v. Armco Steel Company,* 652 S.W.2d 932 (Tex.1983); *Texas Department of Corrections v. Herring,* 513 S.W.2d 6 (Tex.1974). However, the complaint that summary judgment

was granted without opportunity to amend must be raised in the trial court or it is waived. *San Jacinto River Authority v. Duke,* 783 S.W.2d 209 (Tex.1990).

10. In *Hidalgo v. Surety Savings and Loan Association,* 462 S.W.2d 540, 543 fn. 1 (Tex.1971), the court said:

We are not to be understood as holding that summary judgment may not be rendered, when authorized, *on the pleadings,* as, for example, when ... the plaintiff's petition fails to state a legal claim or cause of action. [Emphasis in original] *In such a case summary judgment does not rest on proof supplied by pleading, sworn or unsworn, but on deficiencies in the opposing pleading.* (Emphasis added)

■ Fielding asserts that the notice for the April 7 meeting which was posted at the Dallas County Courthouse was not placed "readily accessible to the general public at all times for at least 72 hours preceding the scheduled time of the meeting" because the courthouse was closed to the public on Saturday and Sunday.[11] Fielding cites *Smith County v. Thornton*, 726 S.W.2d 2 (Tex.1986), as authority for the proposition that Section 3A(h) requires literal compliance.[12]

■ We agree that Section 3A(h) requires strict compliance. However, in *Smith County*, the governmental body was the County, and the notice requirement for counties is stated in Section 3A(d). Therefore, Smith County was required to post notice only at its courthouse. That being the sole notice required, the public would not have readily available access if the courthouse was closed over the weekend.

Unlike Section 3A(d), the safeguard of Section 3A(f) is that notices should be posted in three places: a bulletin board located in the main office of the secretary of state, a bulletin board located in the county courthouse, and at the governmental body's administrative office. The uncontroverted summary judgment evidence shows that the notice which was posted at DART's administrative offices was available to the public on both Saturday and Sunday, thereby complying with the strict compliance required in *Smith County*.

Section 3A(f) also provides for two additional postings: one with the secretary of state and one with the county clerk. The language of Section 3A(f) states that the governmental body shall furnish the notice to those offices and that each office shall then post the notice. When Section 3A(f) is read in conjunction with Section 3A(h), we do not believe that the legislature intended that the main office of the Secretary of State and the county courthouse must be kept open 24 hours a day for 72 hours before all meetings subject to the Texas Open Meetings Act. This argument was recently considered by the court in *City of San Antonio v. Fourth Court of Appeals, supra.* In *San Antonio v. Fourth Court of Appeals, supra,* the court noted:

> The Open Meetings Act is not a legislative scheme for service of process; it has no due process implications. Rather, its purpose is to provide "openness at every stage of [a governmental body's] deliberations." *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 300 (Tex.1990).

The summary judgment evidence conclusively shows that notice for the April 7, 1992, meeting was sent to the Secretary of State by facsimile on or before April 3, 1992; that notice was delivered to the Dallas County Clerk's Office on or before April 3, 1992; and that notice was posted on or before April 3, 1992, outside DART's administration building at 601 Pacific Avenue, Dallas, Texas, which is accessible to the public 24 hours a day.

In his brief, Fielding does not complain of the adequacy or content of the notice itself.[13] We note that the record indicates that Field-

---

**11.** This same argument was made and rejected in *Lipscomb Independent School District v. County School Trustees of Lipscomb County*, 498 S.W.2d 364 (Tex.Civ.App.—Amarillo 1973, writ ref'd n.r.e.), and in *Holloway v. County of Matagorda*, 667 S.W.2d 324 (Tex.App.—Corpus Christi 1984), *aff'd*, 686 S.W.2d 100 (Tex.1985). The *Lipscomb* and *Holloway* opinions, holding that the notice provisions were subject to substantial compliance, were discussed in *Smith County v. Thornton*, 726 S.W.2d 2 (Tex.1986).

**12.** See also *Common Cause v. Metropolitan Transit Authority*, 666 S.W.2d 610 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.), and *City of Fort Worth v. Groves*, 746 S.W.2d 907 (Tex. App.—Fort Worth 1988, no writ), which criticized the decision in *Lipscomb* and which held that strict compliance of Section 3A(h) was required. However, these cases must be read in

light of the later Supreme Court opinions in *Smith County v. Thornton, supra,* and *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762 (Tex.1991).

**13.** In his post-submission brief, Fielding argues that there is a question of fact concerning the adequacy of the April notice. However, the summary judgment evidence shows that the notice described personnel changes and that the severance package would be discussed. The notice for the meeting on April 7, 1992, states:

> 2. Closed Session at 8:20 p.m. under Article 6252–17, Section 2, Sub-section (e) and (g) of the V.A.C.S. to discuss Legal and Personnel Matters (Executive Director's Contract and Resignation).
> 3. Executive Director's Contract and Resignation.

ing did appear at the April 7 meeting to voice his objections to Anderson's termination package.[14] The summary judgment evidence shows that DART complied with the literal notice provisions of Article 6252–17, section 3A(a), (f), and (h). Fielding's fifth point of error is overruled.

In his fourth point of error, Fielding urges that DART's termination of Anderson's employment and approval of his severance package in April of 1992 were ratifications of prior void acts. At issue is Fielding's insistence that the meetings between Lane and Anderson in January were illegal, hence void, for failure to comply with the Texas Open Meetings Act. *Lower Colorado River Authority v. City of San Marcos,* 523 S.W.2d 641 (Tex.1975), instructs us and the law is clear that a governmental body may not ratify its prior illegal acts. See also *Dallas County Flood Control District No. 1 v. Cross,* 815 S.W.2d 271 (Tex.App.—Dallas 1991, writ den'd), and *Ferris v. Texas Board of Chiropractic Examiners,* 808 S.W.2d 514 (Tex.App.—Austin 1991, writ den'd).

The guiding principles of law concerning the Texas Open Meetings Act are recited in *Webster v. Texas & Pacific Motor Transport Co.,* 140 Tex. 131, 166 S.W.2d 75 (Tex.1942), and *Ferris v. Texas Board of Chiropractic Examiners, supra.*

First, predating the Open Meetings Act is a mandate that decisions made by governmental bodies must be made by the body as a whole. In *Webster,* the court stated that the purpose of this principle:

> [I]s to afford each member of the body an opportunity to be present and to impart to his associates the benefit of his experience, counsel, and judgment, and to bring to bear upon them the weight of his argument on the matter to be decided by the Board, in order that the decision, when finally promulgated, may be the composite judgment of the body as a whole.

(See also Opinion No. DM–95 of the Attorney General, March 4, 1992). In *Ferris,* the

court citing from *Cox Enterprises, Inc. v. Board of Trustees of the Austin Independent School District,* 706 S.W.2d 956 (Tex.1986), observed that the second principle mandates that the decision-making process of a governmental body not be clothed in secrecy but rather be subject to public scrutiny:

> The legislature's purpose in passing the Act was to ensure that every regular, special, or called meeting or session of every governmental body, with certain limited exceptions, would be open to the public ... As originally conceived, the Act was designed to ensure that "the public has the opportunity to be informed concerning the transaction of public business" ... The Act is therefore intended to safeguard the public's interest in knowing the workings of its governmental bodies.

While it is true that actions taken by a governmental body in violation of the Texas Open Meetings Act are void and cannot be ratified, to apply that principle to the summary judgment facts before us as suggested by Fielding would be to hold that, once a governmental body has done a void act, the situation could never be corrected. As discussed in *Webster, Ferris,* and *Cox,* that is not the purpose of the Texas Open Meetings Act. Rather, the Texas Open Meetings Act is to insure that the public has the opportunity to be fully apprised about governmental transactions. Anderson and the executive placement firm returned the money to DART. The summary judgment evidence shows that DART properly posted the meeting. Anderson's motion alleges and the minutes of the DART meeting reflect that Fielding attended the April 7 public meeting and voiced his objection. The Board approved Anderson's termination package by a resolution, 14–7.

Next, Fielding argues that any actions taken by the Board in its April 7 meeting were also void because Anderson had already resigned on March 31, 1992. Therefore, Fielding contends, citing *Ferris* as authority, that

---

14. The minutes of the April 7, 1992, DART Board meeting show the following:

*Closed Session:*
2. The Board convened into closed session at 8:20 p.m. under Article 6252–17, Section 2, Sub-section (e) and (g) of the V.A.C.S. to dis-

cuss Legal and Personnel Matters (Executive Director's Contract and Resignation).
The Board reconvened at 9:56 p.m.

\* \* \* \* \* \*

Councilman Paul Fielding and Ms. Pat Cotton made public comments regarding this item.

any actions taken by the Board would result in a ratification of Anderson's previous resignation.[15] Again, we disagree with Fielding's characterization of the Board's actions in April. Simply because Anderson left at the end of March does not make his departure "voluntary." Anderson was leaving at the suggestion of the majority of the Board. The employment contract provides that, among other benefits, Anderson was to receive six months salary at termination. That amount would be the same regardless of when he was terminated.

Therefore, assuming without agreeing that the January meetings between Lane and Anderson were held in violation of the Texas Open Meetings Act, the summary judgment evidence establishes that the April meeting was in compliance and that DART authorized Anderson's termination and severance package in compliance with the Texas Open Meetings Act. Fielding's fourth point of error is overruled. Because of our holding on the fourth and fifth points of error, we need not address Fielding's first and third points of error.

Fielding complains that DART violated Article III, sections 44 and 53 which prohibit paying excessive compensation to public officials when DART approved the termination package. Fielding complains that DART exceeded its constitutional authority. However, Fielding has settled his cause of action with DART. Fielding's second point of error is overruled.

We now address the sixth, seventh, and eighth points of error challenging the court's award of attorney's fees. The trial court awarded attorney's fees to Anderson in the amount of $92,464.77. Article 6252–17, section 3(b) provides: "In an action brought under this Section, a court may assess costs of litigation and reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails."

■ Normally, the award of attorney's fees is a question of fact. However, on a motion for summary judgment, an attorney's affidavit can be sufficient to establish reasonable attorney's fees. See *American 10–Minute Oil Change, Inc. v. Metropolitan National Bank–Farmers Branch*, 783 S.W.2d 598 (Tex.App.—Dallas 1989, no writ); *Purvis Oil Corp. v. Hillin*, 890 S.W.2d 931 (Tex.App.—El Paso 1994, no writ).

■ Anderson's attorney filed an affidavit showing the reasonableness of the fees and attached as an exhibit her time sheet showing hours spent and expenses. Fielding did not file a controverting affidavit contesting the reasonableness of movant's attorney's fees. See *Nguyen Ngoc Giao v. Smith & Lamm, P.C.*, 714 S.W.2d 144 (Tex.App.—Houston [1st Dist.] 1986, no writ), and *Morgan v. Morgan*, 657 S.W.2d 484 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd).

On appeal, Fielding first complains that Anderson's attorney's time records do not segregate that time spent representing DART and that time spent representing Anderson, individually. Therefore, Fielding argues that a fact question was created.

The pleadings indicate that DART was represented by Royce West and that Anderson was represented by Gretchen Benolken. The agreed order of settlement and dismissal between DART and Fielding was dated October 14, 1993, and was signed by West as DART's attorney. Anderson's attorney, Benolken, filed a separate amended answer on Anderson's behalf the next day.

Fielding complains that Benolken's time records show that she began charging DART before that time. However, by contract, DART was responsible for Anderson's attorney's fees. The pleadings do not show that Benolken represented DART. Moreover, Rule 166a(c) provides:

A summary judgment may be based on uncontroverted testimonial evidence of an interested witness, or of an expert witness as to subject matter concerning which the trier of fact ... if the evidence is clear, positive, and direct, otherwise credible and free from contradictions and inconsisten-

---

**15.** In *Ferris,* the employee was seeking reinstatement for an invalid or void act of the Board. Unlike *Ferris,* Anderson is not complaining that he is entitled to his pay as director between the two dates, the date he left and the date of the board's action. The loss of this pay inures to the benefit of DART, not Anderson. Anderson's loss of pay does not invalidate or void the act of the Board on April 7, 1992.

cies, and could have been readily controverted.

Anderson's evidence of attorney's fees was easily controvertible, but it was not. Therefore, the trial court was correct in accepting Anderson's attorney's fees as an established fact.

Next, Fielding argues that Anderson's attorney failed to segregate the time spent defending Fielding's claims from the time spent prosecuting Anderson's counterclaims. Fielding relies upon *Kosberg v. Brown,* 601 S.W.2d 414 (Tex.Civ.App.—Houston [14th Dist.] 1980, no writ), which states that "it is incumbent upon the party asserting those causes of action to segregate them from those for which attorney's fees can be recovered." In *Kosberg,* not all of the claims and counterclaims provided for the recovery of attorney's fees. Therefore, it was incumbent upon the attorneys to segregate the work on compensable actions. However, unlike *Kosberg,* all actions and counterclaims in this suit arise out of the compliance or failure to comply with the Texas Open Meetings Act.

 Next, Fielding complains that Anderson did not incur these attorney's fees because, in actuality, DART was indemnifying them. Paragraph III(c) of Anderson's employment contract provides:

> DART shall indemnify Anderson if he is threatened to be made a party or is made a party to any suit or proceeding of any kind in connection with his services as Executive Director of DART against expenses (including attorney's fees), judgments, fines, and amounts paid in settlement actually and reasonably incurred.

We disagree with Fielding's argument that Anderson did not incur these fees. The contractual agreement between DART and Anderson did not relieve Fielding of his liability to Anderson for attorney's fees.

Finally, Fielding asserts that Anderson is not a prevailing party under Article 6252–17, section 3(b) [16] of the Act and that, because he brought the case in good faith, Fielding should not be made to pay attorney's fees.

Again, we disagree. Anderson is clearly the prevailing party.

 We think that the more interesting issue is whether attorney's fees, provided by the Texas Open Meetings Act, can be awarded when no facts establishing a cause of action under the Act were pleaded or established by the summary judgment evidence against Anderson, individually. We have concluded that they can; otherwise, a frivolous claim under the Act could be made with impunity. Furthermore, we do not read Article 6252–17, section 3(b) as saying that bad faith must be found before the court can award attorney's fees. Fielding's sixth, seventh, and eighth points of error are overruled.

The judgment of the trial court is affirmed.

---

16. Article 6252–17, section 3(b) states:
    In an action brought under this section, a court may assess costs of litigation and reasonable attorney's fees incurred by a plaintiff or defendant who substantially prevails. In exercising its discretion, the court shall consider whether the conduct of the governmental body had a reasonable basis in law and whether the litigation was brought in good faith.