**In re CITY OF SAN BENITO, et al., Relators,**

**City of San Benito, et al., Appellants,**

v.

**Rio Grande Valley Gas Company and Southern Union Company d/b/a Southern Union Gas Company, Appellees.**

**Nos. 13–01–172–CV, 13–01–199–CV.**

Court of Appeals of Texas, Corpus Christi.

Aug. 31, 2001.

Rehearings Overruled Nov. 15, 2001.

Dissenting Opinion on Overruling of Rehearing En Banc Nov. 15, 2001

Adam Poncio, Law Offices of Cerda &
Poncio, San Antonio, Ramon Garcia, Edin-

burg, for relators in Docket No. 13-01-00172-CV.

Benjamin L. Hall, III, Hall Law Firm, Houston, Daniel Bishop, Austin, Juan R. Molina, Law Office of Juan R. Molina, Weslaco, Christina Carlson Dodds, Austin, Jerry K. Clements, Cynthia Keely Timms, Locke & Liddell & Sapp, Dallas, E. Lee Parsley, Locke, Liddell & Sapp, Austin, Kirsten M. Castaneda, Locke, Liddell & Sapp, Dallas, Rene O. Oliveira, Roerig, Oliveira & Fisher, Brownsville, for real party-in-interest in Docket No. 13-01-172-CV.

Fabian Guerrero, Edinburg, for movant in Docket No. 13-01-172-CV.

Noe Gonzalez, 370th District Court, Edinburg, for respondent in Docket No. 13-01-172-CV.

Adam Poncio, Law Offices of Cerda & Poncio, San Antonio, Fabian Guerrero, Edinburg, John O'Quinn, O'Quinn, Kerensky, McAninch & Laminack, Houston, Juan R. Molina, Law Office of Juan R. Molina, Weslaco, for appellants in Docket No. 13-01-00199-CV.

Christina Carlson Dodds, Austin, Cynthia Keely Timms, Locke, Liddell & Sapp, Dallas, Daniel Bishop, E. Lee Parsley, Locke, Liddell & Sapp, Austin, Jerry K. Clements, Kirsten M. Castaneda, Locke, Liddell & Sapp, Dallas, Rene O. Oliveira, Roerig, Oliveira & Fisher, Brownsville, Sherry Scott Chandler, Benjamin L. Hall, III, Hall Law Firm, Houston, for appellees in Docket No. 13-01-199-CV.

Before Justices HINOJOSA, YAÑEZ, and CASTILLO.

---

**OPINION**

Opinion by Justice HINOJOSA.

Relators/appellants, the cities of San Benito, Alamo, San Juan, Donna, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Pharr, Port Isabel, Edcouch, Primera, and Elsa, have filed this appeal and petition for a writ of mandamus. Relators/appellants complain of two orders signed by respondent, the Honorable Noe Gonzalez, presiding judge of the 370th District Court of Hidalgo County, denying (1) their requests to opt out of a class action lawsuit and (2) their objections to the class settlement agreement. The real parties in interest/appellees are Rio Grande Valley Gas Company and Southern Union Company d/b/a Southern Union Gas Company.

### A. BACKGROUND AND PROCEDURAL HISTORY

On June 24, 1996, the 92nd District Court of Hidalgo County,[1] certified as a class:

> All Texas municipal corporations, municipalities, cities, towns, or villages (hereinafter referred to as "municipalities"), excluding the cities of Edinburg and McAllen, that have, or have had, existing or expired municipal franchise fee ordinances or agreements with Rio Grande Valley Gas Co. or Southern Union Gas Company (hereinafter referred to collectively as the "LDC") and where the municipalities were entitled to a franchise fee or payment based on a percentage of the LDC's gross income derived from natural gas sales, and where there has not been the execution of any effective releases of the entire claims alleged in this litigation.

The City of Pharr was designated as a class representative. This Court affirmed

---

1. On May 12, 1999, this case was transferred to the 370th District Court of Hidalgo County, Texas. When the case was in the 92nd District Court, it was Cause No. C-4558-95-A-2; when it was transferred to the 370th District Court, it became Cause No. C-4558-95-G-2.

the class certification order in *Rio Grande Valley Gas Co. v. City of Pharr*, 962 S.W.2d 631 (Tex.App.—Corpus Christi 1997, pet. dism'd). After certifying the class, the trial court, in a notification order dated June 24, 1996, authorized official class notices to be sent to all class members. The order states, in relevant part:

It is further ORDERED, subject to further order of the Court, that a class member may exclude itself from the class by providing the Court with a duly authorized notification indicating its desire to be excluded from the class, and transmitting a certified copy of same by certified U.S. mail, return receipt requested, postmarked on or before August 1, 1996, to Plaintiffs' counsel, Mr. Benjamin L. Hall, III, . . . .

During the designated period, the following cities attempted to file opt out notices: Alton, Donna, La Joya, La Villa, Mission, Palmview, Penitas, Port Isabel, Primera, San Benito, San Juan, Santa Rosa, Edcouch, Harlingen, Wichett, and Alamo. On November 15, 1999, the City of Elsa filed a "Motion To Accept Late Notice of Opting Out." At a hearing on November 23, 1999, the cities contended that they had opted out of the class action.[2] In an order dated February 1, 2000, the trial court found:

that the Cities of Wichett, Harlingen, and Mission timely opted out of this litigation and will not be considered class members for purpose of this class action suit. Regarding the City of Harlingen, the Court finds sufficient evidence that Harlingen and class counsel

have operated in a manner to establish that Harlingen is no longer a class member and, therefore, Harlingen is declared not to be a class member in this case.

Certain parties have requested clarification as to whether certain other cities have timely or properly excluded themselves from this class action suit. The Court finds that the remaining questioned cities, that are not listed in the above paragraph have not. It is therefore, ORDERED, ADJUDGED and DECREED that the following cities did not timely or properly opt out of this class action and, therefore, are class members of this case: Alamo, Alton, Combes, Donna, Eagle Pass, Edcouch, Elsa, Hidalgo, La Feria, La Joya, La Villa, Los Fresnos, Lyford, Palm Valley, Palmview, Port Isabel, Primera, Progreso, Rancho Viejo, Raymondville, Rio Hondo, San Benito, San Juan, Santa Rosa.

On December 14, 2000, all class members were sent a "Class Notification of Proposed Class Action Settlement." The class members were notified that they could object to the proposed settlement agreement by filing a written objection with the Hidalgo County District Clerk by January 31, 2001.[3]

On January 23, 2001, the City of Elsa filed "City of Elsa's Amended Objections and Notice of its Intent to Appear at Fairness Hearing." On January 31, 2001, the Cities of Alamo, Harlingen, San Juan, San Benito, Donna, Palmview, Santa Rosa, Al-

---

**2.** At this same hearing, the City of Pharr was withdrawn as class representative and the Cities of Mercedes and Weslaco continued as class representatives.

**3.** The notification further provided: "Your objections must state the specific reasons why you object to the proposed settlement and any

facts or reasons supporting your position. If you intend to appear personally at the final fairness hearing and speak against the proposed settlement, your objections should include a statement that you intend to appear for such purpose at the final fairness hearing."

ton, La Joya, La Villa, Mission, Penitas, Port Isabel, Edcouch, and Primera filed "Objections to Settlement, Motion to Reconsider Opt Out Request And Request To Be Excluded From Class." The trial court held a fairness hearing for final settlement approval, and after hearing argument of counsel, the court approved the Class Settlement Agreement in an order dated February 15, 2001.

### 1. *The Mandamus*

On March 9, 2001, the Cities of San Benito, Alamo, San Juan, Donna, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Pharr, Port Isabel, Edcouch, and Primera filed a petition for a writ of mandamus in which they asked this Court to direct the respondent to (1) vacate the Agreed Final Judgment of February 15, 2001, and/or (2) vacate the order dated February 1, 2000 regarding the cities' motions to opt out of the class action, in Cause No. C–4558–95–G–2. The cities also filed a motion for emergency temporary relief in which they requested this Court to stay the Agreed Final Judgment. On March 13, 2001, this Court declined to grant the request to stay the Agreed Final Judgment, but set the mandamus proceeding for oral argument.

On March 21, 2001, the City of Elsa asked this Court for permission to join the mandamus proceeding. We granted Elsa's motion on March 27, 2001.

### 2. *The Appeal*

On March 14, 2001, the City of Elsa filed a notice of appeal. On March 16, 2001, the Cities of San Benito, Alamo, San Juan, Donna, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Pharr, Port Isabel, Edcouch, and Primera filed a notice of appeal.[4] This Court then determined that the appeal should be accelerated and considered together with the mandamus proceeding. *See* TEX.R.APP. P. 2.

In their briefs, the Cities contend they were improperly denied the opportunity to opt out of the class action and that the class action settlement approved by the trial court is a grossly unfair and disproportionate settlement.[5]

### B. THE APPEAL

■ The critical issue herein is whether the Cities have standing to prosecute this appeal. Standing is a component of subject matter jurisdiction; it cannot be waived and may be raised for the first time on appeal. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex.2000). In class actions in which the "settlement class"[6] device has not been used, unnamed class members who have not intervened in a class action lawsuit do not have standing to appeal the final judgment in a class action. *San Juan 1990–A, L.P. v. Meridian Oil Inc.*, 951 S.W.2d 159, 165 (Tex. App.—Houston [14th Dist.] 1997, pet. denied); *see also Entex v. City of Pearland*, 990 S.W.2d 904, 912 (Tex.App.—Houston

---

4. From this point on, all the cities involved in the mandamus and appeal will be referred to collectively as "the Cities."

5. We note that the City of Elsa is the only appellant who filed an appellate brief. At oral argument, the remaining appellants asked for an extension of time to file a late appellate brief. We denied the request for extension of time, but did grant the remaining appellants' request to have their mandamus

brief considered in the appeal and to join the City of Elsa's brief.

6. The "settlement class" is a procedural device employed in class action lawsuits. When it is used, the trial court delays certifying the class until the class action is finally settled. *Amchem Prods. v. Windsor*, 521 U.S. 591, 619–20, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 954–55 (Tex.1996).

[14th Dist.] 1999, no pet.); *O'Reilly v. Brodie*, 975 S.W.2d 57, 59–60 (Tex.App.—San Antonio 1998, pet. denied).[7] Sound reasons exist for requiring unnamed class members to formally intervene in the action to gain standing to appeal, including that: (1) unnamed class members cannot represent the class, absent the procedural protections provided in the class action rules; (2) class members who disagree with the course of a class action have adequate procedures available through which their individual interests may be protected; and (3) class actions would become entirely unmanageable and unproductive if each member had standing to individually appeal a judgment. *See San Juan 1990–A, L.P.*, 951 S.W.2d at 163.

The record reflects that the Cities are unnamed class members. Although the City of Pharr initially served as a named class representative, at its request, it was dismissed as a class representative by court order dated February 1, 2000.

The City of Elsa contends in its brief that it did in fact intervene. Elsa argues that its motion to opt out and its objections to the settlement agreement should be construed as an intervention. However, we conclude that by merely objecting to the settlement and appearing through counsel at the fairness hearing, the City of Elsa did not intervene. Rule 60 explicitly requires "filing a pleading" to intervene. TEX.R. CIV. P. 60. Motions are not the functional equivalents of pleadings; insufficient similarities exist between a motion and a pleading to allow them to carry the same legal significance. *San Juan 1990–A, L.P.*, 951 S.W.2d at 165; *Jobe v. Lapidus*, 874 S.W.2d 764, 766 (Tex.App.—Dallas 1994, writ denied) ("we decline to hold that a motion has the same legal significance as a pleading"); *Crain v. San Jacinto Sav. Ass'n*, 781 S.W.2d 638, 639 (Tex.App.—Houston [14th Dist.] 1989, writ dism'd w.o.j.) ("insufficient similarities exist between a motion and a pleading to allow them to carry the same legal significance."). Thus, the City of Elsa did not intervene in the lawsuit.

Because they were unnamed class members, the Cities were required to intervene in the action in the trial court to have standing to appeal. Because they did not intervene, we hold the Cities lack standing to bring this appeal. Therefore, we dismiss this appeal for want of jurisdiction.

## C. THE MANDAMUS

In their petition for a writ of mandamus, the Cities contend the trial court improperly ignored their timely and properly filed "opt-outs" and forced them to remain class members subject to an unfair and improper settlement of the class action.[8]

Mandamus will issue only to correct a clear abuse of discretion when there

---

7. This Court has recently held, in an unpublished opinion, that when the "settlement class" device is used, an unnamed class member is not required to have formally intervened in the lawsuit prior to final judgment in order to have standing to appeal the settlement. *See Northrup v. Southwestern Bell Tel. Co.*, No. 13–00–377–CV, 2001 WL 670958 (Tex.App.—Corpus Christi June 14, 2001, no pet. h.) (op. on rehearing) 2001 Tex.App. LEXIS 4031. The "settlement class" device was not used in the instant case.

8. In the mandamus petition, the Cities also contend that the class certification notice was not properly given and it "did not allow ample time for opt-out responses in order that the municipalities may comply with their charters and other laws." The Cities do not support this contention with any argument or relevant facts to show why the notice was improper. In fact, there is no evidence in the record that the Cities ever objected to the alleged inadequacy of the notice. Accordingly, we conclude this contention is without merit. *See* TEX.R.APP. P. 52.3(h).

is no adequate remedy by appeal. *See Mitchell Energy Corp. v. Ashworth,* 943 S.W.2d 436, 437 (Tex.1997); *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). A trial court abuses its discretion when it does not follow guiding rules and principles and reaches an arbitrary and unreasonable decision. *Walker,* 827 S.W.2d at 839; *Republic Royalty Co. v. Evins,* 931 S.W.2d 338, 342 (Tex.App.—Corpus Christi 1996) (orig.proceeding).

The real parties in interest argue that the Cities have an adequate remedy by appeal because they could have intervened in the class action. We disagree with this argument because intervention is antagonistic to the Cities' expressed desire to not participate in this class action. Accordingly, we conclude the Cities do not have an adequate remedy by appeal.

### 1. *The Cities' Actions*

In order to determine whether the trial court abused its discretion in refusing to allow the relators to opt out of this class action, we must examine the record to determine the actions taken by each individual city to opt out of this class action.

### a. City of Alamo

On July 26, 1996, the city's attorney, James Darling, filed a request that the City of Alamo be excluded from the class.

### b. City of San Juan

The minutes of a regular city commission meeting held on July 17, 1996 show:

> The City Commission went into Executive Session at 7:30 p.m. The meeting was reconvened at 7:50 p.m. Mayor Pro–Tem Guajardo made the motion to authorize the City Attorney to up out [sic] from the exclusion from the class in Cause No. C–4558–9–A–2, City of Pharr, et. al. vs. RGV Gas Co., et. al. Commissioner Puente seconded the motion. The motion carried unanimously.

On July 31, 1996, the city attorney, Jesus Ramirez, filed a request that the City of San Juan be allowed to opt out of the class action.

### c. City of San Benito

On April 9, 1996, the City of San Benito contracted with Texas Municipal Technical Consultants, Inc. ("TMTCI") to protect the city's rights regarding franchise fees and franchisable events.[9] On July 12, 1996, the

---

**9.** The contracts between the various cities and TMTCI state:

> In entering into this agreement the parties have agreed that TMTCI will represent City as follows:
>
> (i) In researching, examining, and review [sic] City's records in order to determine if any franchisable event(s) has occurred by reason of any activity carried out by any person;
>
> (ii) In assisting and advising city as to ordinances and procedures that city should adopt in order to collect compensation from franchisees which conduct activities within the jurisdiction of city for use and occupation of rights-of-way within the jurisdiction of city.
>
> (B) In the event that any research, examination, or review shows that any franchisable event(s) has occurred, TMTCI will review

and audit the record of the franchisee to make a determination as to whether uncollected compensation is due and owing to City, provided that City has in force and effect ordinance(s) or agreement(s) which require such franchisee to allow access to the records of franchisee for the purpose of such review and auditing. If city has no such ordinance(s) or agreement(s) in force and effect, TMTCI will provide its best effort to gain access to the books and records of the franchisee for review and audit, including, if necessary, employment of legal counsel as provided in Section V(g) below.

> (i) After auditing and making a determination that uncollected compensation is due and owing to city, TMTCI will negotiate with franchisees so as to recover uncollected compensation, if any, and if necessary, em-

city's attorney, Ramon Garcia, filed a request that the City of San Benito be excluded from the class. On August 20, 1996, at the regular meeting of the City Commission, Resolution 1996–9 was approved and the following minutes were recorded:

ITEM 5. CONSIDERATION AND ACTION ON RESOLUTION 1996–9: ALL ACTION TAKEN BY THE CITY MANAGER TO EXCLUDE THE CITY FROM PENDING CLASS ACTION LAWSUIT VS. RIO GRANDE VALLEY GAS COMPANY:

Ricardo Morado: Mayor and Commission the resolution is self explanatory. The City indicated they would not participate in the class action because they had TMTCI so the City Manager authorized TMTCI to go ahead and make the necessary arrangements to exclude San Benito from that class action and to secure council [sic] to represent the interest of this city. This resolution is simply for purposing [sic] of ratifying that action officially and allowing them to continue. I believe the attorney engaged by TMTCI on behalf of San Benito for this purposes [sic], Mr. Ramon Garcia from Hidalgo County and the lawsuit is pending in Hidalgo County.

John Vidaurri: The firm of O'Quinn, Kerensky, McAninch & Laminack initiated the class action suit referred to above. Correspondence received from the O'Quinn firm in early July requested that the City decide whether to continue in the class action or opt out. The class action suit was filed for the purpose of determining whether or not payments to municipalities under the terms and conditions of their franchise agreements with the gas companies were in the

ploy legal counsel to recover such compen-

correct amounts. The City Commission approved a contract with Texas Municipal Technical Consultants, Inc. in March 1996 to audit all of our franchise agreements for the same purpose as the class action suit. As a consequence of the City's contract with TMTCI, I advised O'Quinn, Kerensky, McAninch prepare the necessary documentation to exclude the City from the class action suit. I did research our files and found no indication that the City of San Benito ever had agreed to enter into the class action suit. However, after discussions with our City Attorney, I was advised that a city automatically become [sic] part of class action suits unless they request exclusion. In light of our current contractual obligations to TMTCI, I believe that the actions which I took to opt out of the class action suit were appropriate and ask that the City Commission ratify the action.

Resolution 1996–9 was read by Mayor Cesar Gonzalez. Commissioner Gilbert Weaver moved to approve Resolution 1996–9 and Commissioner Robert Alexandre seconded the motion with each Commissioner voting AYE the motion carried.

### d. City of Donna

On October 17, 1995, the City of Donna contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 16, 1996, the City Council convened in regular session and the following minutes were recorded:

**Consideration and possible action regarding request to be excluded from class in Cause No. C–4558–95–A–2,**

sation.

**City of Pharr, et. al. v. Rio Grande Valley Gas Co.:**

The City of Pharr and other entities have filed suit against Rio Grande Valley Gas Company to recover unpaid franchise fees. The City of Donna entered into contract with Texas Municipal Technical Consultants, Inc. on October 17, 1995 for professional services in negotiating franchise agreements with persons that wish to conduct telecommunications activities or other franchisable events within the jurisdiction of the city. Councilman Hernandez motioned and Mayor Pro–Tem Villegas seconded to authorize the City Manager to exclude the City of Donna from Cause No. C–4558–95–A–2 as recommended by the City Manager. The motion carried.

On July 18, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Donna be excluded from the class. On November 16, 1999, the City Council passed Resolution 1999–11–04, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of Donna be allowed to opt out of the class action.

### e. City of Palmview

On October 2, 1995, the City of Palmview contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 9, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Palmview be excluded from the class. The minutes of a special meeting of the Board of Aldermen on September 24, 1996 show:

3. Mayor Jorge G. Garcia asked for motion on Case No. C4558–95–A–2, City of Pharr se; AL [sic] vs. PG & E Gas transmission, Texas Corp. Alderman Eddie Perez made the motion to OPT OUT/Exclude the City of Palmview from the class action suit and Mayor Pro Tem, Solomon Garcia seconded the motion. Motion carried unanimously.

On November 15, 1999, the Board of Aldermen passed Resolution 99–13, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in asking that the City of Palmview be allowed to opt out of the class action.

### f. City of Santa Rosa

On July 9, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Santa Rosa be excluded from the class. On November 16, 1999, the City Council passed Resolution and/or Ordinance No.1999–02, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of Santa Rosa be allowed to opt out of the class action.

### g. City of Alton

On July 18, 1995 and November 17, 1998, the City of Alton contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 9, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Alton be excluded from the class. On November 15, 1999, the City Council passed Resolution 99–34, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of Alton be allowed to opt out of the class action.

### h. City of La Joya

On June 12, 1996, the City of La Joya contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 12, 1996, the city's attorney, Ramon Garcia, filed a request that the City of La Joya be excluded from the class. On November 15, 1999, the City Council passed Resolution And/Or Ordinance No.1999–20, which authorized

and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of La Joya be allowed to opt out of the class action.

### i. City of La Villa

On January 8, 1995, the City of La Villa contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 29, 1996, the city's attorney, Ramon Garcia, filed a request that the City of La Villa be excluded from the class. On November 17, 1999, the City Board of Aldermen passed Resolution No. 11–17–99, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of La Villa be allowed to opt out of the class action.

### j. City of Penitas

On July 25, 1995, the City of Penitas contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 9, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Penitas be excluded from the class. On November 22, 1999, the City Council passed Ordinance 99–05, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of Penitas be allowed to opt out of the class action.

### k. City of Pharr

The City of Pharr was a class representative during the opt out period. There is no evidence that the City of Pharr filed any request to opt out of the class action.

### l. City of Port Isabel

On January 23, 1996, the City of Port Isabel contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 9, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Port Isabel be excluded from the class.

### m. City of Edcouch

On October 4, 1995, the city contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 17, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Edcouch be excluded from the class. On July 19, 1996, at a special meeting of the Board of Aldermen, the following minutes were recorded:

ITEM A. SOUTHERN UNION GAS.

A MOTION WAS MADE BY SANTIAGO GARCIA, SECONDED BY FILOMENA S. ARCAUTE TO APPROVE T.M.T.C.I. TO HIRE RAMON GARCIA TO REPRESENT THE CITY OF EDCOUCH ON CASE OF SOUTHERN UNION GAS VS. THE CITY OF EDCOUCH. MOTION CARRIED.

### n. City of Primera

On December 19, 1995, the city contracted with TMTCI to protect the city's rights regarding franchise fees and franchisable events. On July 29, 1996, the city's attorney, Ramon Garcia, filed a request that the City of Primera be excluded from the class. On November 16, 1999, the City Council passed Resolution and/or Ordinance No. 99–080, which authorized and ratified the actions of TMTCI and the Law Offices of Ramon Garcia in requesting that the City of Primera be allowed to opt out of the class action.

### o. City of Elsa

On November 15, 1999, the City of Elsa filed a "Motion To Accept Late Notice of Opting–Out."

## 2. *Applicable Law*

The governing authorities of cities can express themselves and bind the cities only by acting together in a meeting duly assembled. *Central Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 612–13 (Tex.App.—Corpus Christi 1998, pet. dism'd); *City of Corpus Christi v. Bayfront Assocs., Ltd.,* 814 S.W.2d 98, 105 (Tex.App.—Corpus Christi 1991, writ denied); *see also* Tex. Gov't Code Ann. § 551.002 (Vernon 1994) ("Every regular, special, or called meeting of a governmental body shall be open to the public, except as provided by this chapter."). A city council can transact a city's business transactions only by resolution or ordinance, by majority rule of the council. *Central Power & Light Co.,* 962 S.W.2d at 613; *Bayfront Assocs.,* 814 S.W.2d at 105. No governmental agency can, by contract or otherwise, suspend or surrender its functions, nor can it legally enter into any contract which will embarrass or control its legislative powers and duties which will amount to an abdication thereof. *Bayfront Assocs.,* 814 S.W.2d at 107. A city's governing body cannot delegate the right to make decisions affecting the transaction of city business. *Central Power & Light Co.,* 962 S.W.2d at 613. Although the governing body cannot delegate the right to make decisions affecting the transaction of the municipality's business, it may delegate to others the right to perform acts and duties necessary to the transaction of the municipality's business by resolution or ordinance. *Entex v. City of Pearland,* 990 S.W.2d 904, 911 (Tex.App.—Houston [14th Dist.] 1999, no pet.) (citing Tex. Loc. Gov't Code Ann. § 51.001 (Vernon 1999)).

A governmental body cannot give retroactive effect to a prior illegal act, *i.e.,* an action taken in violation of the Texas Open Meetings Act. *See Lower Colo. River Auth. v. City of San Marcos,* 523 S.W.2d 641, 646–47 (Tex.1975); *City of San Antonio v. River City Cabaret, Ltd.,* 32 S.W.3d 291, 293 (Tex.App.—San Antonio 2000, pet. denied); *Fielding v. Anderson,* 911 S.W.2d 858, 864 (Tex. App.—Eastland 1995, writ denied). The invalid act may be ratified in an open meeting held in accordance with the Texas Open Meetings Act, but the ratification will only be effective from the date of the meeting in which the valid action is taken. *River City Cabaret, Ltd.,* 32 S.W.3d at 293.

## 3. *Analysis*

### a. Cities of Pharr and Elsa

The record shows that the City of Pharr never filed a motion to opt out. The City of Elsa, by its own admission, filed its motion to opt out after the designated time period. We conclude the trial court did not abuse its discretion in not allowing the Cities of Pharr and Elsa to opt out of the class action.

### b. City of Alamo

The City of Alamo filed a request to opt out within the specified time period, but it was solely the action of the city attorney. We find no evidence in the record that the city attorney's action was authorized by the city. A city attorney has authority to act only after the city has authorized him to act on behalf of the city. *Id.* Therefore, we conclude the trial court did not err in denying the City of Alamo's request to opt out.

### c. Cities of San Benito, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Port Isabel, Edcouch, and Primera

We find that Ramon Garcia timely filed requests to opt out on behalf of the cities of San Benito, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Port Isabel, Edcouch, and Primera. How-

ever, we find no evidence in the record that these cities authorized Garcia to file the requests. These cities argue that their contracts with TMTCI gave Garcia the proper authorization to act on their behalf. The TMTCI contracts do state that "If, after good faith attempts to negotiate with a franchisee, TMTCI is not able to resolve an uncollected compensation dispute with such franchisee ... TMTCI, after having consulted with city, shall have the power and right to employ legal counsel of its choice to represent city in enforcing any claim through necessary litigation...." However, we find no evidence in the record that these cities held proper meetings, in accordance with the Texas Open Meetings Act, at which they determined, by majority vote, to opt out of the class action and authorized TMTCI to employ Garcia to opt out on their behalf. In fact, it appears that these cities realized they had this problem because in November 1999, these cities passed resolutions and/or ordinances ratifying the actions of TMTCI and Garcia regarding their requests that they be allowed to opt out of the class action.[10] These ratifications, however, were only effective as of November 1999, and were not retroactive. *See id.* Therefore, we conclude the trial court did not abuse its discretion in denying these cities' requests to opt out.

### d. City of San Juan

██ The record shows that the City of San Juan held a City Commission meeting on July 17, 1996, and unanimously voted to opt out of the class action lawsuit. On July 31, 1996, the city attorney, Jesus Ramirez, filed a request that the City of San Juan be excluded from the class. All actions taken by the City of San Juan were

done within the opt out time period. We conclude that the City of San Juan properly and timely requested it be allowed to opt out of the class.

### e. City of Donna

██ The record shows that the City of Donna, during a City Council meeting held on July 16, 1996, voted to be excluded from the class and authorized the city manager to opt out of the class action lawsuit. On July 18, 1996, Ramon Garcia filed a request that the City of Donna be allowed to opt out of the class. The City of Donna's opt out request was timely and properly filed. We conclude that the City of Donna properly and timely requested it be allowed to opt out of the class.

Accordingly, we hold the respondent abused his discretion by not allowing the cities of San Juan and Donna to opt out of the class action. We conditionally grant the petition for a writ of mandamus of the cities of San Juan and Donna. The writ will issue only if respondent fails to vacate his orders of February 1, 2000 and February 15, 2001, as to the cities of San Juan and Donna.

We deny the petition for a writ of mandamus of the cities of San Benito, Alamo, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Pharr, Port Isabel, Edcouch, Primera, and Elsa.

Before the Court En banc.

### DISSENTING OPINION ON MOTION FOR REHEARING EN BANC

Dissenting Opinion by Justice DORSEY.

I dissent from the majority's denial of relator's motion for rehearing because I

---

10. We find no evidence in the record that the City of Port Isabel ratified the actions of TMTCI and Ramon Garcia. We note that the City of Edcouch ratified the hiring of Garcia, but it did not vote to opt out of the class action and did not authorize Garcia to do so on its behalf in a duly assembled meeting.

would hold that the trial court abused its discretion by denying the cities' requests to opt out of the class action lawsuit.

The opt-out period was from June 24 August 1, 1996—approximately a five-week period of time. On the same day that the class was certified, June 24, the court also signed an order directing the class counsel to "prepare and provide to the members of the class the best notice practicable." That notice is mandated by Rule 42(c) of the Texas Rules of Civil Procedure. Also, as mandated by Rule 42(c), the notice advised the class members of their right to opt out of the class and set a deadline for when such opt-outs must be received in order to be effective. It said:

> [S]ubject to further order of the Court, ... a class member may exclude itself from the class by providing the Court with a duly authorized notification indicating its desire to be excluded from the class, and transmitting a certified copy of same by certified U.S. Mail, return receipt requested, postmarked on or before August 1, 1996, to [counsel for the class].

The order also required the class counsel to submit an affidavit to the court by August 12, 1996, advising the court of the identities of entities to whom the notice was mailed that had not requested exclusion from the class.

The cities of Alamo, San Benito, Palmview, Santa Rosa, Alton, La Joya, La Villa, Penitas, Port Isabel, Edcouch and Primera filed notices to opt out before the deadline had expired, but the trial court found that those opt-out notices were not based upon proper authorization, and, therefore, struck them. This Court held that the trial court acted within its discretion in refusing to allow the cities to opt out of the class action because it was unable to find any evidence that the Cities authorized the attorney who filed the opt-out notices to

take such an action on their behalfs. I believe this reasoning misses the point.

Counsel for the class argued to the trial court the opt-outs were ineffective because they were not authorized by proper City action-that is, no vote was had in accordance with the Texas Open Meetings Act which authorized the opt-outs. While one of the opt-outs was filed by the designated City Attorney, the others were filed by an attorney hired by each of the cities. The argument was that while the contract may have authorized the hiring of that attorney, it did not also authorize the attorney to opt out of a class action. However, the actual authority of the attorney to sign a pleading on behalf of each individual city was not challenged. Rather, it was the authority of the attorney to take the action of opting out on behalf of the cities. I would hold that formal city action is not required to empower an attorney duly employed by a city to file a notice opting the city out of a lawsuit when the intention of the city to opt out is clear.

Governing authorities of cities can express themselves and bind the cities only by acting together in a meeting duly assembled. *Central Power & Light Co. v. City of San Juan*, 962 S.W.2d 602, 613 (Tex.App.-Corpus Christi 1998, pet. dism'd). A city council can transact a city's business transactions only by resolution or ordinance, by majority rule of the council. *Id.* Any meeting of a city requires compliance with the Texas Open Meetings Act, or else the action is voidable by court action. *See* TEX. GOV'T CODE ANN. §§ 551.002, 551.141 (Vernon 1994). While a city's governing body may not delegate the right to make decisions affecting the transaction of city business, the governing body is authorized to delegate to others the right to perform acts and duties necessary to the transaction of the city's business, if that is done by resolution or ordi-

nance, by majority vote. *San Juan*, 962 S.W.2d at 613. It appears that the contracts between the cities and TMTCI authorized the hiring of the attorney who filed the opt-out notices on their behalfs.

When a city is a potential class member, it should know from its charter what action is necessary for the city to opt out of a litigation. *San Juan*, 962 S.W.2d at 613. I would defer to the city's implied determination that filing an opt-out notice does not require formal city action. Filing an opt-out is analogous to filing a notice of appeal in that the failure to file it results in a loss of legal rights for the city and that a relatively short time window exists in which to file it. In *City of San Antonio v. Aguilar*, 670 S.W.2d 681, 686 (Tex.App.-San Antonio 1984, writ dism'd), the city attorney's authority to file a notice of appeal without formal city action was challenged. The court explained:

> We understand that the Open Meetings Act should be broadly construed to protect the public's right to know. However, no public meeting was necessary to consider the appeal. When, as in this case, a city council has been represented by its city attorney in the trial court, the obligation of counsel is to advise the council of the prospective merits of an appeal. Then he must insure appeal. To expect that the decision to appeal must be ratified at a formal public meeting is unrealistic. The city council of a large city would be hard pressed to comply with the Open Meetings Act and also meet the precise requirements of filing notice of appeal.

*Id.*

The requirements imposed on the cities in this case were even more harsh than those imposed upon a litigant wishing to file an appeal. Since notice of the pendency of the class action was not approved until June 24th, it could not have possibly been mailed out before that day. Even assuming the best possible timing scenario, that would have left the cities hardly a month to assemble a meeting and take formal action authorizing an opt-out. I would hold that such a requirement is as unrealistic in the context of an opt-out requirement as it is in the context of a direct appeal. This Court expressly noticed this concern in *Central Power & Light v. City of San Juan*, stating that, in class actions involving municipalities as potential class members, "[t]he class certification notice should allow ample time for opt-out responses in order that the municipalities may comply with their charters and other laws." *San Juan*, 962 S.W.2d at 613. I would hold that the decision to opt out of a class action, when an attorney has been retained to represent the city's legal interests in that regard, is not the type that requires formal city action but is rather an internal administrative decision and not within the purview of the Open Meetings Act. *See Aguilar*, 670 S.W.2d at 686.

Unlike most actions an attorney might take on behalf of a city, in the case of a class action opt-out notice, the failure to act alters the status quo. It seems inappropriate to require formal city action when the city's *inaction*—rather than its action—will change its legal rights and status.

Moreover, I believe that trial courts should liberally allow parties to opt out. The rules regarding opting out are designed to *protect* the putative class members, not to penalize them. In my opinion, the time period that the trial court gave for opting out of this suit was too short. Also, the trial court must keep uppermost in its sights the fact that virtually all the rules regarding class actions are designed to protect the interests of the unnamed class members. *See General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 953–54 (Tex.

1996). The trial court must remain vigilant in fulfilling its duty to protect those interests. *See id.* Class action law, in general, recognizes that those interests are not necessarily in line with the interests of the class proponents—*i.e.,* class counsel and the named representative. *See id.* I would be suspicious when a class proponent attempts to oppose any class member's exercise of his right to opt out, especially when class counsel uses the Texas Open Meetings Act as a sword against those parties he proposes to "represent" as class counsel in order to defeat their ability to opt out of the class. I believe the trial court should be reluctant to force a party to be a part of such a class. If a class member wishes to opt out because it has determined that its interests are not adequately represented through the class action vehicle, I would defer to the class members' judgment. For those reasons, I would have granted the rehearing on the mandamus issue and considered issuing the writ requiring the trial court to give effect to the opt-out notices.